**In the Interest of R.R. and S.J.S., Children.**

No. 06–0460.

Supreme Court of Texas.

Dec. 1, 2006.

Ambrea Rodgers, Dickinson, pro se.

Dean M. Swanda, Swanda & Swanda, PC, Arlington, TX, for Ambrea Rodgers.

April Lynn Carter, John Richard Rolater Jr., Dallas County District Attorney's Office, William T. Hill, Dallas County Criminal D.A.'s Office, Laura Anne Coats, Assistant District Attorney, Appellate Division, Dallas, TX, for the Texas Department of Family and Protective Services.

Irving Wyatt Queal III, Dallas, TX, for R.R. and S.J.S., children.

Shelvin Smith, Dallas, TX, pro se.

Gary Arnold Anderson, Plano, TX, for Samuel Johnson and Andre Green.

PER CURIAM.

Ambrea Rodgers appeals from the termination of her parental rights to her children, R.R. and S.J.S. She asserts that the trial court abused its discretion in refusing to set aside a default judgment and grant her motion for new trial. We agree. We reverse the judgment of the court of appeals and remand for trial.

The Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services (CPS) took custody of Rodgers's son, R.R., after Rodgers was jailed on August 31, 2004 for forgery, fraud, and drug possession. She was pregnant at the time. On September 2, 2004, CPS filed a Suit Affecting the Parent–Child Relationship seeking tempo-

rary managing conservatorship of R.R. On November 27, 2004, while Rodgers continued in custody on her criminal cases, she gave birth to S.J.S. CPS took possession of S.J.S. before the baby left the hospital, and on November 30, filed an amended petition seeking to terminate the parental rights in both children of Rodgers and the children's fathers. The clerk's record shows that the amended petition was mailed to Rodgers at her jail address. Although someone else signed for the mail, Rodgers testified that she received it. CPS filed its second amended petition on December 27, 2004. The Return for the second amended petition shows that it was personally served on Rodgers in jail. She did not file an answer or make an appearance in the termination suit.

On May 20, 2005, the trial court held a hearing and entered a default judgment terminating Rodgers's parental rights as well as the parental rights of the fathers. After being notified that her parental rights had been terminated, Rodgers wrote to the trial court stating that she wanted to appeal the decision and requesting an attorney. The trial court then appointed an attorney to represent her. The attorney filed a motion for new trial and statement of points on appeal (the "motion"). Rodgers's affidavit was attached to the motion. In her affidavit she averred, among other matters, that she had no prior experience with CPS and was not aware of how "the system" worked; she had received a lot of paperwork and did not realize the significance of the termination petition when she received it; the CPS caseworker told her she would get an attorney but did not tell her how that would happen or that Rodgers needed to do anything to get the attorney; Rodgers relied on the caseworker who told Rodgers that "she was there to help," but who did not tell Rodgers that Rodgers needed to write the court to oppose the termination or explain to the court that she was indigent and wanted an attorney; Rodgers thought she would get an attorney automatically like she did in her criminal cases; if she had known that she needed to write the court to oppose the termination and to request an attorney, she would have done so; it was only when CPS advised her that a hearing had been held and her parental rights had been terminated that she realized she was wrong to rely on the CPS worker, who was the only person ever to contact her regarding the termination proceedings, and who she thought was her "go-between" who would tell the court whatever it needed to know and represent Rodgers's best interests; Rodgers thought she was going to be given a chance to handle the matter upon her release from jail; she was to be released in August 2005 and had arranged for a place where she could stay; she regularly wrote letters to her children and the caseworker concerning the children; she believed it was not in the best interest of the children that her parental rights be terminated; she would be willing to go to trial immediately; and she was unable to reimburse CPS for its expenses in taking the default judgment because she was indigent. At the hearing on the motion, the caseworker and Rodgers testified. Following the hearing, the trial court denied the motion. The court of appeals affirmed. 189 S.W.3d 915.

▮▮▮ We review a trial court's denial of a motion for new trial for abuse of discretion. *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex.1994). A default judgment should be set aside and a new trial granted if (1) the failure to answer was not intentional or the result of conscious indifference but was due to a mistake or accident, (2) the defendant sets up a meritorious defense, and (3) the motion is filed at such time that granting a new trial would not

result in delay or otherwise injure the plaintiff. *See Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939). The defendant's burden as to the first *Craddock* element has been satisfied when the factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff. *See Fidelity and Guar. Ins. Co. v. Drewery Const. Co., Inc.,* 186 S.W.3d 571, 576 (Tex.2006). In determining if the defendant's factual assertions are controverted, the court looks to all the evidence in the record. *See Evans,* 889 S.W.2d at 269.

CPS did not file affidavits or evidence in opposition to Rodgers's motion, but the caseworker testified at the hearing on the motion. The caseworker testified that she met Rodgers twice: once at the hospital at the time CPS removed S.J.S., and once after that at the jail. According to the caseworker, she met Rodgers at the jail to talk about the progress of the case and the well-being of the children. The caseworker confirmed that she mailed Rodgers information about the progress of the case, hearing dates, a CPS service plan and information about how the children were doing. She received mail from Rodgers inquiring about the children. She did not inform Rodgers that the hearing set for May 20 was to terminate Rodgers's parental rights because she did not know that the hearing was for that purpose. She was not present at the hearing because she was on vacation.

Rodgers's hearing testimony conformed to her affidavit. She asserted that she was never consciously indifferent about the case as evidenced by her regular letters to her children and the caseworker.

■ Failing to file an answer intentionally or due to conscious indifference means "the defendant knew it was sued but did not care." *Fidelity,* 186 S.W.3d at 576. When determining whether the defendant's failure to file an answer was intentional or due to conscious indifference, a court looks to the knowledge and acts of the defendant. *Evans,* 889 S.W.2d at 269. Not understanding a citation and then doing nothing following service does not constitute a mistake of law that is sufficient to meet the *Craddock* requirements. *See Bank One, Tex., N.A. v. Moody,* 830 S.W.2d 81, 84 (Tex.1992) (citing *Butler v. Dal Tex Mach. & Tool Co. Inc.,* 627 S.W.2d 258, 260 (Tex.App.—Fort Worth 1982, no writ)). But, we have also held that some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care. *Fidelity,* 186 S.W.3d at 576 (citing *Craddock,* 133 S.W.2d at 125).

Rodgers's affidavit and testimony were not to the effect that her failure to file an answer was only because she lacked an understanding of the citation. They were to the effect that based on her prior experiences with the court system and her contacts with CPS, she believed no action on her part was necessary for her interests to be protected and for an attorney to be appointed for her without further action on her part. Those experiences and Rodgers's stated beliefs based on those experiences, together with the uncontroverted facts as to actions Rodgers took—staying in regular contact with the caseworker about the progress of the case, writing her children, inquiring regularly about the children—when taken as true, negate the element of conscious indifference to proceedings designed to terminate the parent-child relationship between Rodgers and her children. *See Evans,* 889 S.W.2d at 269.

■ In order to be entitled to a new trial, Rodgers also must have set up a

meritorious defense and shown that her motion was filed at such time that the granting of a new trial would not result in delay or otherwise injure the plaintiff. *See id.* at 270; *Craddock*, 133 S.W.2d at 126. Because the court of appeals concluded that Rodgers failed to meet the first *Craddock* requirement, it did not consider whether she met the other *Craddock* factors. As this is an accelerated appeal, we will consider these legal issues rather than remand the case for the court of appeals to consider them. Tex.R.App. P. 53.4; *see* Tex. Fam.Code § 109.002.

■ A meritorious defense has been set up so as to meet the second *Craddock* prong if the facts alleged in the movant's motion and supporting affidavits set forth facts which in law constitute a meritorious defense, regardless of whether those facts are controverted. *Evans*, 889 S.W.2d at 270. In regard to Rodgers's claim of having set up a meritorious defense, we note that parental rights may be terminated only if termination is in the best interest of the children. Tex. Fam.Code § 161.001(2). The record reflects averments of fact by Rodgers that she regularly expressed interest in her children and their welfare, was off drugs, had arranged for a stable place where she could stay once she was released in August, had obtained information about how to get food stamps and had already researched which employers would hire felons. Evidence was also submitted that the children, in custody of CPS, were separated and in different foster homes. R.R. had been in an emergency shelter and a foster home since he was taken into custody and the children would be moved again if a foster home could be found that would take both of them.

There are several factors that should be taken into account when determining whether termination of parental rights is in the best interest of the child, including the stability of a proposed placement and the willingness of a child's family to effect positive changes. Tex. Fam.Code § 263.307; *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976). Further, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. Tex. Fam. Code § 153.131(b). Based on all these considerations as well as Rodgers's factual assertions, we conclude that Rodgers set up a meritorious defense to CPS's claim that termination would be in the best interest of the children.

■ Rodgers's motion for new trial was timely filed and urged that granting a new trial would not result in delay or otherwise injure CPS or the children. *See Craddock*, 133 S.W.2d at 126. At the hearing on her motion she testified that she would be ready to go to trial immediately and would not ask for any continuances. It was uncontroverted that under the one-year deadline in the Family Code, at the time of the default judgment hearing CPS had more than two months to terminate Rodgers's parental rights or face dismissal of the suit, or seek an additional 180-day extension of the deadline. *See* Tex. Fam. Code § 263.401(a), (b).

If a defendant alleges that granting a new trial will not injure the plaintiff, the burden then shifts to the plaintiff to present proof of injury. *Evans*, 889 S.W.2d at 270. The use of equitable principles guides the determination as to injury. *Id.* The CPS caseworker testified that she did not know if a delay in terminating Rodgers's parental rights would hurt the children. Although Rodgers did not offer to reimburse CPS for its expenses in taking the default judgment, she offered uncontroverted evidence that she was indigent. CPS presented no evidence that it, or the children, would be injured by any delay inherent in granting Rodgers a new trial.

Nor did CPS offer evidence of expenses it incurred or evidence that it would be harmed by Rodgers's inability to reimburse any such expenses. In any event, we fail to see the equity under these circumstances of allowing Rodgers's failure to offer to reimburse expenses to the State to preclude the granting of a new trial. We conclude that Rodgers met the third *Craddock* requirement. Because Rodgers satisfied all three *Craddock* requirements, we do not consider her claim that the *Craddock* standard should be modified for parental termination proceedings.

Without hearing oral argument, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.