**Robert SUTHERLAND, Jesus De La Garza and Southern Customs Paint and Body, Petitioners,**

**v.**

**Robert Keith SPENCER, Respondent.**

**No. 10–0750.**

Supreme Court of Texas.

June 29, 2012.

Jon D. Brooks, Brooks LLP, Corpus Christi, TX, for Robert Sutherland.

Rene Rodriguez, Law Offices of Rene Rodriguez, Corpus Christi, TX, for Robert Keith Spencer.

Justice GREEN delivered the opinion of the Court, in which Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, Justice JOHNSON, Justice GUZMAN and Justice LEHRMANN joined.

In this case, we consider whether the excuse offered by defendants for failing to answer a lawsuit timely is sufficient to satisfy the first element of the *Craddock* test for setting aside a no-answer default judgment; *i.e.*, that the failure to appear was not intentional or the result of conscious indifference but was the result of a mistake or an accident.[1] *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Com.App.1939). Because the affidavits attached to the defendants' motion established the first *Craddock* element, the defendants' motion for new trial could not be denied on the ground that the excuse was insufficient. Accordingly, we reverse the court of appeals' judgment and remand the case to that court.

I

Robert Spencer contracted with Southern Customs Paint and Body to paint and perform a frame-off restoration on his 1965 Chevrolet Corvette for $7,500. Spencer alleged that when he went to pick up his car five months later, he found that the work was incomplete and that irreplaceable parts and pieces of the vehicle were missing. In accordance with the notice provision of the Deceptive Trade Practices Act (DTPA), Spencer sent Southern

---

1. The style of this case initially reflected the parties as they were originally named in the trial court, including "Jesse Garza." Because De La Garza's briefing in this Court refers to him as "Jesus De La Garza," which is consistent with his affidavit filed in the trial court, we have corrected the case style to reflect what we believe is his legal name. There is no dispute that these names, as well as "Jesse De La Garza" and "Jesse de la Garza," refer to the same person.

Customs and its co-operators, Jesus "Jesse" De La Garza and Robert Sutherland, (collectively, Southern Customs) a demand letter alerting them to the possibility of a suit. *See* TEX. BUS. & COM.CODE § 17.505 (requiring a consumer to give written notice to the defendant at least sixty days before filing suit). Upon receipt, Southern Customs responded to that letter.

A year later, Spencer brought a DTPA suit against Southern Customs for violating the terms of the automobile repair service contract. Spencer complained of an incomplete and inadequate paint job on his Corvette, lost car parts, and false representations regarding the time and cost for completing the work. Through a process server, Spencer served all three named defendants with citations. One citation named "Jesse Garza" as the defendant for service, but the return stated that the citation was served on "Jesse De La Garza." Another citation named "Southern Customs Paint and Body" as a defendant, while the return stated the citation was served on "Southern Custom's by delivering to Robert Sutherland." De La Garza pointed out the citation's error in his name to the process server, who then offered to take the citation back to correct the mistake. De La Garza declined that offer and told the process server that regardless of the error, he knew he was the person being sued and to leave the documents with him.

Southern Customs failed to file a timely answer. Spencer obtained a default judgment that awarded him nearly $150,000, which included the trebling of Spencer's economic and mental anguish damages due to alleged intentional conduct under the DTPA, as well as attorney's fees.

 Southern Customs filed a timely motion for new trial, arguing that service on De La Garza was improper, and that Southern Customs established the neces-sary *Craddock* elements to set aside the default judgment. Under *Craddock*, a trial court is required to set aside a default judgment if (1) "the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident"; (2) "the motion for a new trial sets up a meritorious defense"; and (3) granting the motion "will occasion no delay or otherwise work an injury to the plaintiff." *Craddock*, 133 S.W.2d at 126. The trial court denied the motion for new trial. The court of appeals affirmed the trial court's judgment, holding that the default judgment was not void for defective service, and that Southern Customs was not entitled to a new trial because it failed to satisfy the first *Craddock* element. 377 S.W.3d 1, 5–6 (Tex. App.-Corpus Christi–Edinburg 2010). Because Southern Customs asserted facts that, if true, negate intentional or consciously indifferent conduct, we reverse the court of appeals' judgment and remand the case for consideration of the second and third elements of the *Craddock* test.

## II

 Southern Customs asserts that service of process was invalid because one of the citations misstated the name of Jesse De La Garza and the return on the other citation did not show proper service on Southern Customs Paint and Body. Southern Customs states that "[t]here are no presumptions in favor of valid issuance, service, and return of citation," citing *Fidelity & Guaranty Insurance Co. v. Drewery Construction Co.*, 186 S.W.3d 571, 573–74 (Tex.2006). That is true when attacking a default judgment by restricted appeal, but our analysis is different when, as here, a default judgment is attacked by a motion for new trial. *See id.* (discussing the difference between a restricted appeal, which is brought directly in the appellate court where the record is limited, and a

motion for new trial or bill of review, which is filed in the trial court where the record can be developed). In this circumstance, we focus on "the critical question in any default judgment: 'Why did the defendant not appear?'" *Id.* at 574. If the defendant did not appear because he or she never received the suit papers, then the court should generally set aside the default judgment. *Id.* But if the defendant received the suit papers and has some other reason for not appearing, then the default judgment must be set aside if the defendant proves the three elements of the *Craddock* test. *Id.* (citing *Craddock,* 133 S.W.2d at 126). Here, De La Garza and Sutherland acknowledged in their affidavits that they received the suit papers. Thus, to determine whether the trial court erred by refusing to set aside the default judgment and order a new trial, we must determine whether Southern Customs satisfied the *Craddock* test. *Id.* Because the court of appeals addressed only *Craddock*'s first element, we limit our review to that determination. *See Old Repub. Ins. Co. v. Scott,* 873 S.W.2d 381, 382 (Tex.1994) (per curiam).

A defendant satisfies its burden as to the first *Craddock* element when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff. *In re R.R.,* 209 S.W.3d 112, 115 (Tex.2006) (per curiam). Consciously indifferent conduct occurs when "the defendant knew it was sued but did not care." *Fidelity,* 186 S.W.3d at 576. Generally, "some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care." *In re R.R.,* 209 S.W.3d at 115. Here, Southern Customs offered an excuse that was not controverted and, if

true, negated intentional or consciously indifferent conduct on its part. Specifically, Southern Customs alleged, among other reasons, that the citation was left in a stack of papers on a desk and forgotten about because of limited time spent at the office due to weather conditions over a nearly three-week period during the Christmas holiday season. *See Craddock,* 133 S.W.2d at 126 (holding that the effect of weather on business "certainly constituted some excuse for the oversight"). Spencer made no attempt to controvert Southern Customs's claims regarding the weather conditions during this time period or the weather's adverse effect on Southern Customs's business. We conclude that this excuse is sufficient to show that the failure to answer was not the result of intentional or consciously indifferent conduct.

Contrary to the dissent's assertion, this decision does not alter our default judgment jurisprudence. We do not hold that forgetfulness alone is sufficient to satisfy the first *Craddock* element; rather, we simply conclude that the excuse presented here is so similar to that which we accepted as sufficient in *Craddock* that the same result is required. Southern Customs provided some excuse for its oversight, which satisfies the first element of *Craddock*. In *Craddock*, weather conditions altered a company's ordinary course of business, which ultimately led to the misplacement of a citation among less urgent mail and the failure to answer the lawsuit before judgment. *Id.* at 125. Similarly, weather conditions were alleged in this case to have altered the ordinary course of business for Southern Customs, ultimately leading Sutherland and De La Garza to misplace the citations in a pile of ordinary papers and to fail to answer the lawsuit before judgment.[2] This *Craddock*-like situation,

[2] Sutherland's and De La Garza's uncontro- verted affidavits each state:

coupled with time spent out of the office for the holidays and the defendants' forgetfulness, combine to create "some excuse, although not necessarily a good one" and demonstrate that the failure to answer was not intentional or the result of conscious indifference. *See In re R.R.*, 209 S.W.3d at 115. As we stated in *Craddock,* "the absence of an intentional failure to answer rather than a real excuse for not answering was the controlling fact." *Craddock,* 133 S.W.2d at 125. Because of the similarity of the excuse asserted in *Craddock* and the uncontroverted excuse in this case, our holding does not extend *Craddock;* it merely follows it. Moreover, our holding not only conforms to existing law, it also comports with the policy that "an adjudication on the merits is preferred in Texas." *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 86 (Tex.1992).

## III

Southern Customs provided a sufficient excuse for failing to answer the suit timely, thus satisfying the first element of the *Craddock* standard. The trial court's denial of Southern Customs's motion for new trial, therefore, cannot be affirmed on the ground that its excuse for not answering was insufficient. The court of appeals erred when it held otherwise. Accordingly, we grant the petition for review and, without hearing oral argument, we reverse the court of appeals' judgment and remand the case to that court for consideration of the second and third *Craddock* elements. TEX.R.APP. P. 59.1.

> When we received the papers, it was less than a week before the Christmas holidays. The weather conditions during this period made it difficult for me to perform much labor for any customers because weather conditions adversely affect paint work on automobiles. I did return to the shop on

Chief Justice JEFFERSON filed a dissenting opinion, in which Justice WILLETT joined.

Chief Justice JEFFERSON, joined by Justice WILLETT, dissenting.

"I forgot."

We reject this excuse when tax returns are late, or when homework is missing, but a defendant can now use it to disregard an official directive by the State of Texas that he either answer a lawsuit or risk a judgment against him. The defendants here received and reviewed the citation and petition, placed the papers on their office desk, stopped thinking about the lawsuit because of the holidays and "weather conditions," and ultimately forgot about it. If those facts constitute a sufficient excuse for neglecting to answer a lawsuit, the rules and precedent governing default judgments have been displaced by a simple command: no default judgment will stand if the defendant asserts that the mundane distractions of everyday life destroyed his cognition.

Because we prefer a merits determination to a procedural forfeit, we have been reluctant to uphold a default judgment if it is clear that the defendant intended to answer the lawsuit. *See Holt Atherton Indus. v. Heine,* 835 S.W.2d 80, 86 (Tex. 1992) ("[A]n adjudication on the merits is preferred in Texas."); *see also Titan Indem. Co. v. Old S. Ins. Grp., Inc.,* 221 S.W.3d 703, 708 (Tex.App.-San Antonio 2006, no pet.) ("It is a basic tenet of jurisprudence that the law abhors a default because equity is rarely served by a default."). This policy should always inform

> Monday and worked part of the day.... I also worked briefly on Tuesday, December 23, 2008, again, just returning automobiles and scheduling work. By this time, and due, in part, to the holidays, I was not thinking about the papers that had been delivered to me at my shop.

our analysis, but that does not mean we can simply ignore procedural commands. A rule of procedure is a rule of law. We should tread carefully before we tolerate its disregard based on the tenuous rationale presented here.

Our precedent and rules have warned about the risk of default for more than a century. It functions primarily to spur quick action when a defendant is served with a lawsuit. Our legal system is built around deadlines. Deadlines ensure the orderly process of litigation. Statutes of limitations force the plaintiff to act, and the risk of default induces the defendant to answer. *See, e.g.,* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2681, at 9 (3d ed.1998) ("[T]he possibility of being held in default acts as a deterrent to those parties resorting to delay as an element of their litigation strategy."). If that tool is to have any effect, and the rule of law any meaning, it must be enforced. *Cf. Edwards Aquifer Auth. v. Chem. Lime, Ltd.,* 291 S.W.3d 392, 403 (Tex.2009) ("Filing deadlines ... necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced. Any less rigid standard would risk encouraging a lax attitude toward filing dates." (quoting *United States v. Locke,* 471 U.S. 84, 101, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985))).

Long ago, having taken all of these considerations into account, we announced that a default judgment should be set aside if the defendant can establish certain benchmarks:

A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Com. App.1939). Our mission was to "prevent an injustice to the defendant without working an injustice on the plaintiff." *Id.* Because the *Craddock* standard is equitable, its application will vary on a case-by-case basis. Over the years, we have focused the inquiry on the degree to which the defendant knew about the lawsuit but took no affirmative steps to answer it, even after knowing about the consequence of inaction.

We have had many occasions to describe how a defendant can show that the failure to answer was neither intentional nor the result of conscious indifference. Conscious indifference means "that the defendant knew it was sued but did not care." *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.,* 186 S.W.3d 571, 576 (Tex.2006) (per curiam). We have also clarified the types of mistakes that negate conscious indifference. *Compare Bank One, Tex., N.A. v. Moody,* 830 S.W.2d 81, 84–85 (Tex.1992) (accepting the bank's excuse that based on its past practices it thought it need only freeze a debtor's account and submit the balance of the account to the clerk of the court rather than file an answer in response to a writ of garnishment), *with In re R.R.,* 209 S.W.3d 112, 115 (Tex.2006) (per curiam) ("Not understanding a citation and then doing nothing following service does not constitute a mistake of law that is sufficient to meet the *Craddock* requirements."). We have even offered guidance on how to proceed through the analysis, instructing lower courts to look to the "knowledge and acts" of the defendants, *Strackbein v. Prewitt,* 671 S.W.2d

37, 39 (Tex.1984), and informing courts that "[a]n excuse need not be a good one to suffice," *Fidelity,* 186 S.W.3d at 576. But in the end, the facts always drive the analysis, and it is the facts that clarify the standard. *See, e.g., Bank One,* 830 S.W.2d at 83 ("The court's application of its rule in *Craddock* to the facts of *Craddock* further clarifies the rule.").

We recently held "that *some* excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care." *In re R.R.,* 209 S.W.3d at 115 (emphasis added) (citing *Fidelity,* 186 S.W.3d at 576). Respondents have argued that *any* excuse is sufficient. But that cannot be so because we subsequently upheld a default judgment because the offered excuse was wholly insufficient. *See Levine v. Shackelford, Melton & McKinley, L.L.P.,* 248 S.W.3d 166, 168–69 (Tex.2008) (upholding a default judgment based on the defense attorney's "pattern of ignoring deadlines and warnings from the opposing party" despite the defendants' claim "that their attorney placed the answer, along with a filing letter, in his 'outgoing mail bin' four days before the trial court signed the original default judgment"). If any excuse negated conscious indifference then *Craddock*'s command would lose all meaning. Thus, there will always be a question of whether the facts reveal a sufficient excuse. *See, e.g., Smith v. Babcock & Wilcox Constr. Co.,* 913 S.W.2d 467, 468 (Tex.1995) (per curiam) ("A failure to appear is not intentional or due to conscious indifference within the meaning of the rule merely because it is deliberate; it must also be without *adequate* justification." (emphasis added)). And our prior cases show what types of excuses qualify:

● Not receiving the citation is always a sufficient excuse for not answering. *See, e.g., Estate of Pollack v. McMurrey,* 858 S.W.2d 388, 391 (Tex.1993) (noting that no evidence established that the defense attorney knew that his clients had been served and that the failure to answer under these circumstances "could not have been intentional or the result of conscious indifference"); *cf. Mathis v. Lockwood,* 166 S.W.3d 743, 745 (Tex. 2005) (per curiam) (accepting a defendant's excuse that she failed to appear at trial because she never received notice of the setting).

● Losing the service papers can be a sufficient excuse if it is "supported by some explanation from the person most likely to have seen them, or of the efforts made to find them." *Fidelity,* 186 S.W.3d at 575–76 (setting a default judgment aside based on the defendant's excuse of losing the citation because the defendant's affidavits showed no intent or indifference but instead detailed its "efforts to establish a system that would avoid precisely what happened").

● Misplacing the citation is sufficient when it is the result of a turnover in staff or a breakdown in communication. *See, e.g., Dir., State Emp. Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 269 (Tex.1994) (setting aside a post-answer default judgment when the attorney failed to appear because her predecessor, whom she replaced after trial had been set, misdated the trial date on his calendar and conveyed the wrong information to her); *Old Republic Ins. Co. v. Scott,* 873 S.W.2d 381, 382 (Tex. 1994) (per curiam) (accepting a workers' compensation carrier's excuse that the citation was misplaced because it was inadvertently included with files that were being transferred from one adjustment company to another); *Strackbein,* 671 S.W.2d at 39 (finding no conscious indifference when the failure to answer was the result of a "breakdown of communication" between two individuals, each of whom thought the other was

going to forward the relevant materials to the attorney).

- Some mistakes of law suffice if the mistake is the result of a defendant's prior interactions with the law. *See, e.g., In re R.R.*, 209 S.W.3d at 115 (holding that a mother's mistake of law that was "based on her prior experiences with the court system and her contacts with CPS," along with her action of "staying in regular contact with the caseworker about the progress of the case" was sufficient to "negate the element of conscious indifference to proceedings designed to terminate the parent-child relationship between [her] and her children"); *Bank One, Tex.*, 830 S.W.2d at 84–85.

This list is not exhaustive, but it is a useful point of reference when analyzing a default judgment. None of these cases, however, address the type of excuse presented in this case. Both De La Garza and Sutherland explain their failure to answer as follows:

I remember someone coming to my shop on or about December 19, 2008, and leaving some papers with me and my partner. This was a Friday. The person who gave the papers to me did not explain what they were for or that I had any obligation to do anything in response. I had never been sued before like this and have no experience with the legal system. I briefly reviewed the papers and the[n] placed them on a desk in my office. My desk is covered in papers, concerning various matters. We do not employ a secretary or have any administrative help. My partner and I do everything. When we received the papers, it was less than a week before the Christmas holidays. The weather conditions during this period made it difficult for me to perform much labor for any customers because weather conditions adversely affect paint work on automobiles. I did return to the shop on Monday and worked part of the day. However, the work was limited to mostly returning automobiles to customers. I spent little time in my office. I also worked briefly on Tuesday, December 23, 2008, again, just returning automobiles and scheduling work. By this time, and due, in part, to the holidays, I was not thinking about the papers that had been delivered to me at my shop. The papers had been placed on my desk but were not on my mind and were camouflaged with other papers;

I did not return to the shop again after December 23, 2008, until January 5, 2009. During this period, the shop was closed for the holidays and, in part, because of the weather conditions. I also spent a lot of time during this period in San Antonio, Texas, to visit friends for the holidays. Also during this period, my thoughts were on the holidays and things I had to do to plan and prepare for the holidays. Therefore, my thoughts were not on the papers that had been delivered to me;

Between January 5, 2009, and January 16, 2009, I resumed a regular schedule at the shop. During this period, I was working and not thinking about the papers that had been delivered to me. In fact, by this time, I had forgotten that [sic] about them. I also did not understand or realize that I had any obligation to do anything, including filing an answer to the papers within any time period. This was clearly a mistake on my part;

I now understand that a default judgment was entered because an answer to the suit was not filed within the time allowed. My failure to review the documents and understand what they must have been was an accident or mistake by me because I did not understand the significance of the documents and even failed to remember that I had gotten

them. Further, the papers were given to me during the Christmas and New Year's holiday period, when my mind was focused elsewhere and not on the papers. I have never been sued before. Nor did I consciously disregard answering the suit because I did not even realize that the papers that had been delivered required any attention by me. Had I realized what the documents must have been, I would have immediately retained the services of an attorney to represent me, as I did as soon as I received notice of the default judgment. The notice received by me in the mail was the first indication that I had that a lawsuit had been filed against me that required affirmative action by me.[1]

This excuse cannot suffice. The defendants did not lose the citation. They knew where it was. De La Garza placed it on his desk upon receipt. *Cf. Fidelity*, 186 S.W.3d at 575 ("People often do not know where or how they lost something—that is precisely why it remains 'lost.'"). Nor is this a case where a mistake of law justifies the failure to answer. The only mistake the defendants offer is that they did not know that they had to respond to the citation. Yet they read the citation when the process server delivered it. The citation said: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." *See* Tex.R. Civ. P. 99(c). Even putting aside the citation's clear warning, we have held that "[n]ot understanding a citation and then doing nothing following service does not constitute a mistake of law that is

sufficient to meet the *Craddock* requirements." *In re R.R.*, 209 S.W.3d at 115.

This case is distinct from *Craddock*, where inclement weather caused the defendant to misplace the citation. There, an insurance company fell behind in its work because of an influx of claims due to a recent hail and wind storm. *Craddock*, 133 S.W.2d at 125. To catch up, the company began separating important mail "from that which was not so important." *Id.* In the process, the citation was inadvertently placed with the unimportant mail, despite being marked "urgent," and was not discovered until the day the default judgment was rendered. *Id.*

In this case, the affidavits obliquely speak of "weather conditions." There is no assertion that the weather impeded access to the courthouse, precluded the retention of a lawyer, or (as in *Craddock*) overburdened the defendants' business with an influx of work. Indeed, according to the affidavits, the defendants had more time on their hands as business subsided due to the weather.

That leaves "the holidays." We are lenient when deadlines fall on legal holidays. *See* Tex.R. Civ. P. 4. But the rules nevertheless require that litigants answer lawsuits, request a jury, move for new trial, perfect an appeal—all within prescribed time limits and even when holidays intervene. In any event, the defendants offer no particular reason why the holidays prevented them from answering the lawsuit. Rather, they assert that their minds were preoccupied by the holidays, to the exclusion of the lawsuit. Consequently, this case comes down to one proposition: that a defendant who says he forgot about being sued is *not indifferent to the risk of default.*

---

1. The only difference between the excuse provided in De La Garza's affidavit and Sutherland's affidavit is that Sutherland's does not contain the sentence: "I also spent a lot of time during this period in San Antonio, Texas, to visit friends for the holidays."

Even a liberal interpretation of our precedent cannot justify the Court's acceptance of this excuse. As we have consistently instructed, determining whether the failure to answer was a result of conscious indifference requires looking to the "knowledge and acts" of the defendant. *Strackbein*, 671 S.W.2d at 39. Here, the defendants reviewed the documents, set them on the desk, and then did nothing. Absent a justifiable mistake of law, we have never set aside a default judgment when the defendant did nothing after receiving the citation. Instead, the defendants have always made some effort, or demonstrated an intent, to respond. One of our more lenient cases illustrates this point. In *Strackbein*, Strackbein sued Prewitt. *Id.* at 38. When Prewitt failed to answer, Strackbein obtained a default judgment, and Prewitt later sought a new trial. *Id.* Prewitt's affidavits in support of his motion for new trial established the following:

(1) on June 18, three days after being served, Prewitt called Mr. Bentley and asked if Bentley would represent him in the suit. He was advised by Bentley that he would do so if the papers in the case were forwarded to him; (2) Prewitt then instructed Julie Miracle to gather all of the documents pertaining to the Strackbein matter; (3) on June 23, after the documents had been assembled, Prewitt again called Bentley's office and talked with a secretary who advised him that Bentley was out of town but that he should mail the documents to her so that the matter could be timely handled; (4) Prewitt then instructed Julie Miracle to mail the documents to Bentley's office; (5) however, due to a breakdown of communication, Julie Miracle thought Prewitt was going to mail the documents and Prewitt thought Julie Miracle would mail them; (6) instead, the papers were misplaced in the office and were not discovered until Prewitt received notice of default; and (7) until that time, Prewitt believed that the papers were in the attorney's office and that the suit was being handled by the attorney.

*Id.* at 39. Based on the affidavit, we concluded that "there [was] no reasonable interpretation ... which would constitute evidence that Prewitt's failure to answer the citation was a result of an intentional act or conscious indifference." *Id.* Prewitt twice contacted an attorney and took steps to answer the lawsuit. De La Garza and Sutherland, by contrast, reviewed the citation, put it on a desk, and focused their attention elsewhere—the holidays, work, visiting friends. These actions do not negate conscious indifference—they establish it. *See Fidelity*, 186 S.W.3d at 575–76 ("[T]he *Craddock* standard is one of intentional or conscious indifference—that the defendant knew it was sued but did not care."). Holding otherwise renders the citation's command impotent.

We will one day see a case in which a defendant served with citation is so overwhelmed with events that a trial judge exercises sound discretion to order a new trial. In this case, however, the period from the defendants' receipt of the citation to notice of the default is marked with contempt for their obligation to the rule of law. The trial court was not required to accept the defendants' excuse on these facts. Because the Court holds otherwise, I respectfully dissent.