**Affirmed and Memorandum Opinion filed July 16, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00121-CV

---

### JENNA TABAKMAN, Appellant

### V.

### GARY TABAKMAN, Appellee

---

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-20660**

---

## M E M O R A N D U M   O P I N I O N

Jenna Tabakman appeals from a no-answer default final decree of divorce that dissolved her marriage to Gary Tabakman. In three issues, Jenna contends that (1) the trial court never acquired personal jurisdiction over her because there was no valid service of process; (2) she established her entitlement to a new trial pursuant to the factors listed in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939); and (3) the evidence was legally and factually insufficient to support the division of the marital estate in the default decree. We affirm.

*Background*

The parties were married in 2009 and had one child together, a daughter born in 2015. Gary filed his Original Petition for divorce on April 5, 2022. Shortly thereafter, Jenna moved out of the marital residence in Houston and went to live with her parents, who also reside in Houston.

Gary filed a First Amended Petition on July 13, 2022, and a Motion for Alternative Service on August 3, 2022. In the order granting the motion, the trial court stated that service on Jenna could be effected by a process server "leaving a copy of the citation with pleadings and orders attached to the front door at 12625 Memorial Drive, Unit 108, Houston, Texas 77024," which is the address of Jenna's parent's residence. The court further ordered that "[p]roof of service shall be made by the person executing the return, stating when the citation was served and where it was taped at on the front door of the residence." An Affidavit of Service signed by process server Rhonda Stephens stated that on August 25, 2022, at 7:46 p.m., she posted copies of the "Citation, First Amended Petition for Divorce, and Order on Motion for Alternative Service . . . to the front door of 12625 Memorial Drive, Unit 108, Houston, Texas 77024" as per the order. Jenna never filed an answer and never made an appearance in the lawsuit until after the associate judge orally rendered a default judgment.

The associate judge held a hearing and orally rendered a default judgment on October 10, 2022. Gary testified at the hearing, and his Sworn Inventory and Appraisement and Proposed Property Division was admitted into evidence. In the inventory, Gary assigned a value of $175,000 to a Fidelity brokerage account in Jenna's name and proposed she receive the entirety of the account. During the hearing, Gary acknowledged that he did not have access to the Fidelity account and did not know the account number. He explained that the appraised value was an

2

approximation based on Jenna's funding of the retirement account through the years and the amount he had seen in the account a few years before. He stated that he had "good reason to believe" the estimated value.

The inventory listed the total value of the couple's marital assets at $540,307.41 and proposed Jenna receive $270,217.60 and Gary receive $270,089.81, including the full amount of the estimated equity in the marital residence ($155,437.78). The inventory further listed the couple's total liabilities at $194,678.80 (excepting the debt owed on the residence) and assigned $40,842 of that to Jenna and $153,836.80 to Gary. Thus, according to the inventory, Jenna would receive a net total of $229,375.60, or 66.36 percent, and Gary would receive a net total of $116,253.01, or 33.64 percent. At the conclusion of the hearing, the trial court granted the divorce, ordered the marital residence sold and the proceeds divided evenly (instead of all of the equity going to Gary as he had proposed), granted "other requested relief . . . per the inventory," and granted the requested relief for the couple's minor child, which was joint managing conservatorship.

On October 26, 2022, Jenna appeared and filed an Original Answer, and five days later, she filed a Motion to Set Aside the Default Judgment and In the Alternative a Motion for New Trial. Notwithstanding Jenna's appearance, on November 4, 2022, the trial court signed a Default Final Decree of Divorce.[1] Jenna thereafter amended her motion twice, and the trial court held a hearing on the second amended motion. Several witnesses testified at the hearing, including Jenna and Gary, Jenna's father, and Stephens, the process server. Numerous exhibits were also admitted into evidence, including emails, text messages, affidavits, photographs, and a letter. Jenna argued among other things at the hearing that she

---

[1] Jenna does not argue on appeal that the trial court abused its discretion by signing the Default Final Decree of Divorce after she appeared.

never received service of process.

## *Discussion*

The critical question in this appeal from a default final decree of divorce is: why did Jenna, the respondent, not file an answer and appear? *See Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012). If Jenna did not appear because she never received the suit papers, then we should set aside the default judgment. *See id*. If she received the suit papers but has some other reason for not appearing, then the default judgment must be set aside if she proved the three elements of the *Craddock* test. *See id*. We will begin our analysis by examining whether Jenna received valid service of process before turning to her arguments regarding the *Craddock* elements. Lastly, we will consider Jenna's contention that the final decree was not supported by legally or factually sufficient evidence.

## I. Service of Process

### A. Standards of Review

As stated above, in her first issue, Jenna contends that the trial court never acquired personal jurisdiction over her because there was no valid service of process. Unless the record affirmatively shows an appearance by the respondent, proper service of citation on the respondent, or a written waiver of service at the time a default judgment is rendered, the trial court does not have personal jurisdiction to render a default judgment against the respondent. *See Creaven v. Creaven*, 551 S.W.3d 865, 869–70 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Whether a court has personal jurisdiction over a respondent is a question of law that we review de novo. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Frequently, when deciding this question of law, a

trial court will be required to resolve questions of fact. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023); *BMC Software*, 83 S.W.3d at 794. On appeal, the trial court's findings, express or implied, may be challenged for legal and factual sufficiency. *See BMC Software*, 83 S.W.3d at 794–95; *see also Gregory v. Graves*, No. 06-23-00005-CV, 2023 WL 8446339, at *5 (Tex. App.—Texarkana Dec. 6, 2023, no pet.) (mem. op.) (applying *BMC Software* specifically in the context of a service of process dispute).

In reviewing for legal sufficiency, we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The question is whether the evidence submitted would enable reasonable and fair-minded people to find the facts at issue. *See id*. The factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony. *See id*. at 819. In reviewing for factual sufficiency, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). Again, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

For a no-answer default judgment to withstand direct attack, the record must establish strict compliance with the rules of civil procedure governing issuance,

service, and return of citation. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). If the record does not affirmatively show strict compliance, the attempted service of process is invalid, the trial court has no personal jurisdiction over a defendant, and the judgment is void. *See Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007); *Creaven*, 551 S.W.3d at 870.

Texas Rule of Civil Procedure 106 authorizes a court to order a substitute method of service. Tex. R. Civ. P. 106(b)(2). When a plaintiff uses substituted service, Texas law places a burden on the plaintiff to prove that he or she served the defendant in the manner required by the applicable rule. *Creaven*, 551 S.W.3d at 870. "Where citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court." Tex. R. Civ. P. 107(f). When a trial court orders substituted service under Rule 106, the only authority for the substituted service is the order itself. *Creaven*, 551 S.W.3d at 870.

## B. Analysis

Jenna raises three arguments as to why there was no valid service of process in this case: (1) the evidence refutes that the case documents were served at all; (2) the trial court's order required multiple pleadings and orders be served along with the citation but the process server reported only serving the amended petition and the order authorizing substitute service; and (3) the trial court's order required that the process server's return state where on the door the documents were taped but the return failed to do so. For the reasons discussed below, we find no merit in any of these arguments.

### 1. Evidence Regarding Service

As stated, Jenna first argues that the evidence she submitted refutes that the

case documents were actually served. The order stated that service could be effected by a process server attaching the documents to the front door at 12625 Memorial Drive, Unit 108, Houston, Texas 77024. Stephens, the process server, stated in her Affidavit of Service that on August 25, 2022, at 7:46 p.m., she posted the documents "to the front door of 12625 Memorial Drive, Unit 108, Houston, Texas 77024."

Stephens further testified at the hearing on the motion for new trial that on August 25, 2022, she approached the guard shack at the entrance to the townhome neighborhood where Jenna's parents live. She told the guard that she had a delivery for the resident in Unit 108, the guard let her through, and she then posted the documents on the front door of Unit 108. Stephens explained that she took photographs of the front of the unit and of the door where the documents were attached. The photos were admitted into evidence. One of the photos shows an area of the unit that included a garage and a large number, "108," and Jenna confirmed in her testimony that this image showed her parent's residence where she was staying at the time. The photographs of the front door are clear enough to tell that there are documents affixed but not so clear as to tell what the documents are. Stephens further explained that she taped the documents with blue painter's tape at the top of the left side of the door glass so that it would be visible from the inside. Stephens said that she did not see any construction work at the property or any construction vehicles or workers when she posted the documents. She confirmed that she was absolutely certain and had no doubt that she posted the documents to the front door of 12625 Memorial Drive, Unit 108, Houston, Texas on August 25, 2022.

Jenna, however, cites to several pieces of evidence that she contends refutes Stephens' testimony and evidence. She first points to her own testimony in which

she denied being approached by a process server or being made aware someone was trying to serve her. She also said that she does not recall anyone knocking on the door of her parent's home on August 25.

Jenna additionally cites to the affidavit of a construction project manager who had a crew performing remediation work at Jenna's parents' house around August 25. The work was apparently necessary because the dishwasher had overflowed. The project manager asserted that at no time did he see anyone post documents at the door of the residence and none of his workers reported seeing any documents. He did not, however, state whether his crew was working at 7:46 p.m. when the process server said that she posted the documents.

Jenna also presented an affidavit from a volunteer with the neighborhood homeowner's association, who explained that the security guards were trained to ask every visitor where they were going and then to text or call the resident to let them know. He said that it would be very unusual for a visitor to come when a guard was on duty and for the guard not to notify the resident. Jenna also provided security guard log entries for August 25, which do not list any process servers or other visitors to Unit 108. Indeed, the log does not show any construction crew arrivals for Unit 108, even though the project manager stated that they had to tell the security guard where they were going when they entered the community. Jenna did not present testimony from any guard who may have been on duty on August 25.

Jenna's father also testified, explaining that he was not aware of any attempts to serve Jenna, he did not see anything posted at his front door on August 25, and the security guards are supposed to contact him by telephone call or text whenever a visitor comes to his residence. He further said that he did not receive any texts or calls about a process server.

The evidence was legally and factually sufficient to support the trial court's implied finding that the process server served the case documents on Jenna by posting them on the door of her parent's residence. As stated, the server gave explicit testimony regarding how she served the documents, stated she had no doubt she did so at the correct address, and provided photographic evidence in support. Although Jenna certainly offered evidence that could be interpreted as suggesting service was not accomplished in the manner ordered, the trial court as factfinder was free to accept the process server's direct testimony. *City of Keller*, 168 S.W.3d at 819 (legal sufficiency); *GTE Mobilnet*, 61 S.W.3d at 615–16 (factual sufficiency).[2]

## 2. "Pleadings and Orders"

Next, Jenna argues that the manner of service failed to strictly comply with the order for substitute service because while the order stated that the citation was to be served "with pleadings and orders," the process server only attached one pleading (the amended petition) and one order (the order for substitute service) to the citation that was served. It is important to note at the outset what Jenna does not argue. Jenna does not argue that the order for substitute service itself was impermissibly vague or otherwise improper, and she does not argue that the return did not accurately reflect what was actually served. Instead, she argues only that because the order included the plural words "pleadings and orders," the process server was required to serve both the original and the amended petition and both

---

[2] The only case that Jenna references in this portion of her brief is *Sozanski v. Plesh*, but that case is readily distinguishable. 394 S.W.3d 601 (Tex. App.—Houston [1st. Dist.] 2012, no pet.). In *Sozanski*, evidence demonstrated that the respondent did not reside at the address where substitute service was attempted, but instead, a third party resided there and did not know how to reach the respondent, so she returned the documents to the court. *Id.* at 603, 605. In the present case, it is undisputed that Jenna was residing at the address where substitute service was allegedly effected and the process server gave direct testimony supported by photographic evidence of service at that address.

the first order for substitute service (relating to service of the original petition) and the second order for substitute service. Beyond a general citation to boilerplate language in *Creaven* regarding the requirement of "strict compliance," *see* 551 S.W.3d at 870, Jenna does not cite any relevant authority in support of this argument.

Although we are certainly cognizant of the stringent requirements of service of process in default judgment cases, we disagree that the order required service of anything beyond the citation, first amended petition, and the second order for substitute service. The citation explicitly references only the first amended petition as being attached, which makes sense because the first amended petition superseded the original petition. *See* Tex. R. Civ. P. 65; *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 633 (Tex. 2008) ("Our rules provide that amended pleadings and their contents take the place of prior pleadings."). Likewise, the second order for substitute service is the only relevant order that could have been served on Jenna. There was no confusion in this case regarding what documents should have been served and what documents were served. *See Heggen v. Graybar Elec. Co.*, No. 14-06-00058-CV, 2007 WL 43830, at *2 (Tex. App.—Houston [14th Dist.] Jan. 9, 2007, no pet.) (mem. op.) (holding slight language variation did not create uncertainty to a degree rendering service defective); *Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 871 (Tex. App.—Houston [1st Dist.] 1995, no writ) (holding service was proper despite fact the pleading being served was "original petition" and the return said a "complaint" was served); *see also Primate*, 884 S.W.2d at 153 (holding service was not valid where "the only proof that Primate . . . was served with anything at all is a return which recites service of a pleading in which it had not been sued"); *Daigrepont v. Preuss*, No. 05-18-01271-CV, 2019 WL 2150916, at *3–4 (Tex. App.—Dallas

May 17, 2019, no pet.) (mem. op.) (holding service was not valid where order required service of first amended petition and discovery requests but return indicated original petition and a case information sheet were served instead). Accordingly, we find no merit in Jenna's second argument.

### 3. Where the Documents Were Taped

Lastly under this issue, Jenna argues that the process server's return was deficient because while the trial court's order required that the return identify where on the door the documents were taped, the return does not so indicate. While Jenna is correct that this information was missing from the original return, the information was ultimately supplied by the process server's testimony at the hearing on the motion for new trial. Under the Texas Supreme Court's analysis in *Higginbotham v. General Life and Accident Insurance Co.*, such testimony—and the trial court's express holding that service was proper—effectively amended the return to show strict compliance with the court's order for substitute service. 796 S.W.2d 695, 695–97 (Tex. 1990).

Under Texas Rule of Civil Procedure 118, a trial court may authorize a proof of service to be amended. Tex. R. Civ. P. 118. In *Higginbotham*, the original return stated the time of service but did not indicate that the time of service was during the defaulting company's regular business hours as required by the statute under which service was effected. 796 S.W.2d at 695. Evidence in a motion for new trial hearing, however, established that the time of service was during the company's regular business hours. *Id.* at 696. In the order denying the motion for new trial, the trial court expressly found that the company had been properly served under the rules for service. *Id.* In its opinion, the supreme court reasoned that the trial court's finding that service was proper was sufficient to fulfill the requirement of an express authorization to amend the return. *Id.* at 696–97 ("[W]e see no point in

11

requiring the trial judge to sign a separate order labeled 'Order Granting Amendment of Return.' The order signed by the judge in the record is tantamount to an order amending the return.").

As indicated above, essentially the same thing occurred in this case as occurred in *Higginbotham*. The return lacked required information that was provided by evidence at the motion for new trial hearing, and the trial court expressly found that service was proper. Such finding under the circumstances was tantamount to an express order authorizing amendment of the return. *See id.*; *see also Ulusal v. Lentz Eng'g, L.C.*, 491 S.W.3d 910, 916–17 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (applying *Higginbotham*); *In re M.C.B.*, 400 S.W.3d 630, 634–35 (Tex. App.—Dallas 2013, no pet.) (applying *Higginbotham* and holding trial court properly considered process server's testimony that he affixed the citation to the front door with duct tape). *Cf. LEJ Dev. Corp. v. Sw. Bank*, 407 S.W.3d 863, 867–68 (Tex. App.—Fort Worth 2013, no pet.) (citing *Higginbotham* for proposition that amended return relates back to date of original return for purpose of determining whether return was on file for the required period before a default was taken). Finding no merit to any of Jenna's arguments under her first issue, we overrule the first issue.

## II. *Craddock*

### A. Standards of Review

In her second issue, Jenna contends that she established her entitlement to a new trial pursuant to *Craddock*. Under *Craddock*, a default judgment should be set aside and a new trial granted when the defaulting party establishes: (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake; (2) the motion for new trial sets up a meritorious defense; and (3) granting the motion will occasion no delay or otherwise injure the

plaintiff. 133 S.W.2d at 126. A party satisfies its burden as to the first *Craddock* element when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted. *Sutherland*, 376 S.W.3d at 755. When factual assertions are controverted, the question of whether the failure to answer was intentional or the result of conscious indifference is a fact question. *Rhodes v. Kelly*, No. 05-16-00888-CV, 2017 WL 2774452, at *8 (Tex. App.—Dallas June 27, 2017, pet. denied) (mem. op.); *see also Est. of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993). "Consciously indifferent conduct occurs when 'the defendant knew it was sued but did not care.'" *Sutherland*, 376 S.W.3d at 755 (quoting *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex. 2006) (per curiam)). "Generally, 'some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care.'" *Id*. (quoting *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006)).

## B. Analysis

Jenna first points to her own testimony that she was not aware of any attempts to serve her with process in this case and asserting she did not take any steps to avoid being served. Jenna does not cite, however, any authority in support of the position that this testimony alone was sufficient to establish the first *Craddock* element.

Regardless, Jenna admitted that she received an emailed letter from Gary on April 26, 2022, that discussed the divorce process, attached the original petition, and encouraged her to accept service. She also acknowledged that he sent her a waiver of service form, and she did not deny that Gary spoke to her dozens of times about the divorce during the summer of 2022 when asked if she recalled those conversations.

Gary testified that prior to the filing of this case, they spent almost a year in couple's therapy where divorce was discussed as an option. He said that he first told Jenna about the divorce filing in April 2022 before sending her the letter with the attached petition. He subsequently sent her an email that included a list of attorneys who could help them and attached a service waiver. In a text exchange, Gary then asked Jenna to "[p]lease sign the waiver of service," to which, Jenna responded by asking about their daughter. Gary further testified that he notified Jenna when he filed the amended petition seeking custody of their daughter, but again, he got no response. Although Jenna testified that at some point, she decided to stop reading Gary's texts and emails, Gary testified that he informed Jenna about the divorce proceedings and the fact someone was trying to serve her not only through texts and emails but also in dozens of telephone conversations and by discussing the matter in person with Jenna's mother. Gary stated that he informed Jenna about the lawsuit, citation, and waiver. Several exhibits were also admitted that support Gary's testimony.

Jenna's factual assertions about her alleged lack of awareness regarding the lawsuit were certainly controverted, and as factfinder, the trial court was free to accept Gary's testimony and exhibits over Jenna's testimony. *See Sutherland*, 376 S.W.3d at 755; *Est. of Pollack*, 858 S.W.2d at 391; *Rhodes*, 2017 WL 2774452, at *8; *see also Paul v. ATX Lender 5, LLC*, No. 03-21-00346-CV, 2023 WL 1998890, at *5 (Tex. App.—Austin Feb. 15, 2023, no pet.) (mem. op.) (holding trial court would not have abused its discretion by finding defendant did not prove that his failure to answer or appear was not intentional or the result of conscious indifference but due to an accident or mistake where defendant's assertions regarding knowledge of lawsuit were controverted); *Hickey v. Vanderbilt Mortg. & Fin., Inc.*, No. 11-18-00088-CV, 2019 WL 3727634, at *4 (Tex. App.—Eastland

Aug. 8, 2019, no pet.) (mem. op.) (holding trial court could have reasonably found that defendant's failure to answer was the result of conscious indifference where evidence indicated defendant was aware of lawsuit and of attempts to serve him with process).

Additionally, Jenna contends that the facts of this case are analogous to those addressed by the Texas Supreme Court in *In re Marriage of Sandoval*, 619 S.W.3d 716, 721 (Tex. 2021). In *Sandoval*, the respondent in a divorce case filed a motion for new trial after a default final decree was rendered, asserting that although he did not object to being divorced or to the court making necessary orders, he had been unaware that the petitioner was seeking real property in the divorce proceedings that respondent claimed was his separate property and not part of the community estate. *Id.* at 720. In reversing the default decree, the supreme court reasoned that respondent provided a reasonable explanation for his failure to answer—he did not contest the divorce itself and was unaware she was seeking his separate property until after he saw the decree. *Id.* at 723.

Jenna contends that the present case is controlled by the holding in *Sandoval* because she, too, has a separate property claim that was effectively resolved in the default final decree. Specifically, Jenna contends that her separate property funds were used for the down payment on the marital home purchased in 2014. Gary disputes this claim, but even if the down payment funds were Jenna's separate property, she acknowledges that the marital home itself was community property. She therefore would have known that the home would be a part of any divorce proceedings. Accordingly, *Sandoval* is readily distinguishable and not controlling.

Jenna's arguments under her second issue are without merit. Accordingly, we overrule the second issue.

***Sufficiency of the Evidence***

15

Lastly, in her third issue, Jenna contends that the evidence was legally and factually insufficient to support the division of the marital estate in the default final decree. Specifically, Jenna insists that the evidence was insufficient to support Gary's evaluation of a Fidelity financial account in her name at $175,000.

The Family Code requires the trial court in a divorce proceeding to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001. We review a trial court's division of property under an abuse of discretion standard. *Quijano v. Quijano*, 347 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Assessments of the legal and factual sufficiency of the evidence are not independent grounds for reversal in this context, but they are relevant factors in assessing whether the trial court abused its discretion. *Quijano*, 347 S.W.3d at 349.

The value of community assets is generally determined as of the date of divorce or as close to that date as possible. *Id*. The values of individual items are evidentiary to the ultimate issue of whether the trial court divided the properties in a just and right manner. *Walsh v. Walsh*, No. 14–10–00629–CV, 2012 WL 3016845, at *1 (Tex. App.—Houston [14th Dist.] July 24, 2012, no pet.) (mem. op.).

In a suit for divorce, the petition may not be taken as confessed if the respondent does not file an answer. Tex. Fam. Code § 6.701. Therefore, when a respondent fails to answer, the petitioner still must present evidence to support the material allegations in the petition and the default judgment is subject to challenges to the sufficiency of the evidence. *See, e.g.*, *In re Marriage of Williams*, 646

16

S.W.3d 542, 544–45 (Tex. 2022); *Vazquez v. Vazquez*, 292 S.W.3d 80, 83–84 (Tex. App.—Houston [14th Dist.] 2007, no pet.). In reviewing Jenna's third issue, we utilize the same standards regarding legal and factual sufficiency of the evidence as set forth above. To determine whether a trial court abused its discretion because the evidence was legally or factually insufficient to support its decision, we consider (1) whether the trial court had sufficient evidence upon which to exercise its discretion and, if not, (2) whether the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *Williams*, 646 S.W.3d at 545.

In his inventory, which was admitted at the default judgment hearing, Gary assigned a value of $175,000 to the Fidelity brokerage account. During the hearing, he acknowledged he did not have access to the account but explained that the appraised value was an approximation based on Jenna's history of funding the account and the balance Gary had seen in the account a few years before. He averred that he had "good reason to believe" the estimated value.

Jenna argues that this case is analogous to *Fuentes v. Zaragosa*, 555 S.W.3d 141 (Tex. App.—Houston [1st. Dist.] 2018, no pet). In *Fuentes*, our sister court concluded that the trial court lacked sufficient evidence to identify the scope of the community estate where the petitioner failed to provide any valuation evidence, or even values, for numerous community assets, including businesses, airplanes, and yachts. *Id*. at 164–65. In contrast, Jenna here complains about the valuation of only one asset, the Fidelity account, and Gary testified as to the value of that asset based on his personal knowledge regarding the historic contributions to that account and the previous balance in that account. Moreover, beyond a cursory statement, Jenna does not offer any substantive challenge to the trial court's division of the marital estate as being so unjust and unfair as to constitute an abuse of discretion.

17

*Williams*, 646 S.W.3d at 545; *see also Tran v. Hoang*, No. 08-22-00100-CV, 2023 WL 4441138, at *5 (Tex. App.—El Paso July 10, 2023, no pet.) (mem. op.) (overruling challenge to trial court's division of marital estate where party only challenged valuation and did not offer an argument as to why the division was unfair and unjust). Jenna has not established that the trial court abused its discretion in its division of the marital estate. Accordingly, we overrule Jenna's third issue.

We affirm the trial court's decree.

/s/    Frances Bourliot
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.

18