

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00296-CV

**IN THE INTEREST OF T.M.C.**, A.M.C., and N.R.S.C., Children

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2014PA02352
Honorable Peter Sakai, Judge Presiding

Opinion by:    Jason Pulliam, Justice

Sitting:    Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  September 14, 2016

AFFIRMED

Tremayne C. appeals the trial court's order terminating his parental rights to his three children, T.M.C., A.M.C., and N.R.S.C.  In his sole issue on appeal, Tremayne asserts the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the children's best interest.  We affirm the trial court's order.

### BACKGROUND

The Texas Department of Family and Protective Services filed an original petition to terminate Tremayne's parental rights to his children on October 3, 2014.  The children were five, four, and three at that time, and were removed from the home based on allegations of physical and sexual abuse and neglectful supervision.  Trial began on February 22, 2016, was recessed, and then completed on April 29, 2016.

When the case was called for trial on February 22, 2016, Tremayne was not present. His attorney explained Tremayne "has been living in and out of town." While the case was pending, Tremayne's attorney only had three or four phone conversations with Tremayne although the attorney stated he gave Tremayne at least three different ways to contact him. The attorney stated that although Tremayne's wishes to be a part of his children's lives were consistent, "his actions have not comported with what he insists he wants to happen." The attorney explained, "He has given me no directions in terms of trial strategy. He has given me no directions in terms of what he desires to see for the children." The trial court found Tremayne was duly notified of the trial setting but failed to appear.

The Department called its investigator as its first witness who testified the children were seven, six, and five at the time of trial. The investigator stated the investigation began on August 8, 2014, in response to alleged sexual abuse of N.R.S.C., physical abuse of T.M.C., and neglectful supervision of all three children. Based on the reported abuse, the investigator made contact with the family and spoke with each family member. The investigator reviewed the family's prior history and found the children's mother had a consistent history of being in abusive relationships and exposing the children to domestic violence and neglectful supervision. The investigator testified Tremayne was convicted of injuring T.M.C. in 2010 and sentenced to four years in prison. Tremayne also beat the children's mother in front of the children. The investigator further testified the police were called to arrest the boyfriend of the children's mother based on N.R.S.C.'s outcry of sexual abuse, and the police arrested him for possession of marijuana. After implementing a safety plan, the investigator closed her case on September 11, 2014.

On October 2, 2014, the Department received another referral for alleged sexual and physical abuse of N.R.S.C. by the same boyfriend. During the investigation of that referral, the children informed the investigator they were no longer living with the safety placement but were

living with their mother and her boyfriend. The children were afraid of the boyfriend and had again been exposed to domestic violence. The children were removed from the home and placed in a shelter. At the conclusion of the investigator's testimony, the trial was recessed and reset because the Department's caseworker was on maternity leave.

When the case was called for the second day of trial on April 29, 2016, Tremayne was present with his attorney. The children's mother relinquished her parental rights to the children. After testifying regarding her relinquishment, the children's mother expressed her concern about Tremayne remaining in the children's lives. She testified he was in prison for four years for beating their oldest child. She also testified Tremayne was violent toward both her and the children the entire time they were married.

The next witness called by the Department was the caseworker who had been the caseworker since the inception of the case. The caseworker testified Tremayne signed a service plan containing many requirements, including therapy and parenting classes; however, he did not complete any of the required services. Tremayne's last visit with the children was in December of 2014 which was his only visit with the children since the inception of the case. Tremayne's last contact with the Department prior to the week of trial was October of 2015. The caseworker testified she met with Tremayne on multiple occasions at the onset of the case to offer him services. Throughout the case, the caseworker spoke with Tremayne approximately ten times by telephone because there were times when his phone was turned off.

Tremayne's service plan was admitted as an exhibit. The plan stated the family had undergone multiple investigations and a previous case in which the children were removed from their parents and then reunified. The plan further stated it appears the parents did not learn from the previously worked services and lack the consistent skills to provide a safe and stable home environment for the children. The plan provided detailed contact information and locations where

Tremayne could engage in required services. The caseworker also testified Tremayne had been convicted for injuring T.M.C., and a judgment documenting the conviction was admitted into evidence.

The caseworker testified the children had been in the same foster home since February of 2015. The children were receiving special behavioral and academic interventions in school and were being seen by a developmental behavioral specialist. The specialist had developed a plan to transition the children to a permanent home. The caseworker testified terminating Tremayne's parental rights was in the children's best interest because he had not been present in the children's lives, had not worked to address his issues, and the children had no bond with him.

The children's therapist also testified at trial. The children had been seeing the therapist for about a year. When the therapist first started seeing the children, they were very angry and violent, would use a lot of curse words, and acted out violently and sexually during play therapy. During the year in therapy, the children had improved because they were given structure and a safe place. The therapist testified he had seen no evidence the children were attached to Tremayne, and the children had not said anything about Tremayne.

Tremayne was the final witness to testify. Tremayne admitted he did not complete his service plan. Tremayne testified he did not complete the services because he was homeless. Although Tremayne stated he understood the Department paid for the classes, he testified he was unable to get to the location of the classes. He stated he last saw the children in December of 2014 because he was homeless in 2015; however, he would take gifts for the children to the Department's office. Tremayne admitted one reason he did not visit the children was his drug and alcohol use. Tremayne stated that he would sometimes go three or four days without eating while he was homeless and would sometimes steal food. Tremayne testified he was living in a faith-

based home participating in a 90-day program and no longer smoked or drank. Tremayne also stated he had check stubs from his employment. Tremayne denied beating the children's mother.

At the conclusion of the evidence, the trial court announced it was terminating Tremayne's parental rights. Tremayne appeals.

### STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2016); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*.

In reviewing the factual sufficiency of the evidence to support the termination of parental rights, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a

factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## PREDICATE FINDINGS

Tremayne does not challenge the sufficiency of the evidence to support the predicate statutory grounds for terminating his parental rights. Evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). The trial court found by clear and convincing evidence that the following predicate findings supported the termination of Tremayne's parental rights: (1) Tremayne constructively abandoned the children for not less than six months, had not regularly visited or maintained significant contact with the children, and had demonstrated an inability to provide the children with a safe environment; (2) Tremayne failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal for abuse or neglect; (3) Tremayne used a controlled substance in a manner that endangered the health or safety of the children and failed to complete a court-ordered substance abuse treatment program; and (4) Tremayne knowingly engaged in criminal conduct that resulted in his conviction and confinement and inability to care for the children.

## BEST INTEREST FINDING

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2016). In determining whether a child's parent is willing and able to provide the child

with a safe environment, the court should consider: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id*. at § 263.307(b).

Courts also may apply the non-exhaustive Holley factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent

which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

The children were five, four, and three at the time of their removal and were seven, six, and five at the time of trial. The family had undergone multiple investigations in the past and the children had previously been removed from the home. The children's past history made them particularly vulnerable and in need of a safe environment. There was no evidence the children had any bond with Tremayne who had only visited the children one time in the almost two years between the date they were placed in the Department's care and trial.

When the case was called for the first day of trial, Tremayne was not present, and his attorney testified he had been living in and out of town. Although Tremayne testified he had been living in a faith-based home for approximately a month and a half, he admitted he was homeless for almost an entire year and sometimes had to steal food. Tremayne offered no testimony regarding the manner in which he would provide for himself and the children when he completed the 90-day program in which he was engaged. Although Tremayne testified he was working, he did not provide any testimony regarding the number of hours he worked, his rate of pay, or the length of time he had been employed.

Tremayne was sentenced to four years in prison for injuring T.M.C. and admitted he had not engaged in any of the services that could teach him how to parent during the almost two years the case was pending. Although Tremayne stated he had not engaged in services because he was homeless, he acknowledged the Department provided services at no cost. The children's mother also testified Tremayne beat her and the children.

The children were receiving therapy and special interventions because of the manner in which their past affected their behaviors. In the absence of a structured environment, however, the children would likely relapse. The Department planned to continue providing the children with special services that would allow them to ultimately transition to a permanent home. Tremayne offered no testimony regarding his plans for the children.

Having reviewed the record, we hold the evidence is sufficient to support the trial court's finding that termination was in the children's best interest.

## CONCLUSION

The trial court's order is affirmed.

Jason Pulliam, Justice