UNION PACIFIC CORPORATION, Appellant,

v.

Dan V. LEGG, Jr. and Suzanne Legg, Individually, as the Surviving Parents of Ryan Dustin Legg, Deceased and as Anticipated Administrators of the Estate of Ryan Dustin Legg, Appellees.

No. 03–00–00661–CV.

Court of Appeals of Texas, Austin.

April 26, 2001.

Rehearing Overruled July 26, 2001.

John L. Foster, Jeffrey D. Miller, Minton, Burton, Foster & Collins, P.C., Austin, for appellees.

Richard N. Carrell, Fulbright & Jaworski, L.L.P., Houston, for appellant.

Before Justices YEAKEL, PATTERSON and POWERS.*

POWERS, Justice (Retired).

Union Pacific Corporation appeals from a no-answer default judgment recovered by Dan V. Legg, Jr., and Suzanne Legg ("the Leggs") on causes of action arising out of the death of their son Ryan Dustin Legg in a train-automobile collision that occurred November 21, 1999, in Rockdale, Texas. We will reverse the judgment and remand the cause to the trial court.

---

\* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The default judgment, signed on April 17, 2000, after an evidentiary hearing, recites that the court found Willie Bennie Baker and Union Pacific Corporation jointly and severally "indebted" to the Leggs "individually" and "as executors of the Estate of Ryan Dustin Legg," in various amounts set out in the judgment. These sums total $72,762,804 but the decretal part of the judgment awards plaintiffs, in their representative and individual capacities, an aggregate sum of $70,824,424.

In an order signed June 16, 2000, the trial court granted the Leggs' motion to sever their causes of action against Union Pacific Corpo-

## THE CONTROVERSY

In an original petition filed March 21, 2000, the Leggs alleged two causes of action. The first was a wrongful-death action to recover for losses sustained by them as a result of their son's death. In their alleged capacity "as the anticipated administrators of the Estate of Ryan Dustin Legg," the Leggs also stated a survival cause of action for the pain, suffering, and death suffered by Ryan. *See Gandara v. Slade*, 832 S.W.2d 164, 167 (Tex.App.—Austin 1992, no writ). Each cause of action was founded upon the alleged negligence and gross negligence of two defendants named in the Leggs' original petition, namely "Willie Bennie Baker and Union Pacific Corporation."

The district clerk issued a citation requiring service upon "Union Pacific *Railroad*, by serving C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201."

■ Before either defendant appeared in the cause, the Leggs obtained, on April 17, 2000, a default judgment against the two named defendants, jointly and severally, in the apparent amount of $70,824,424.[1]

ration and "Willie Bennie Walker, named as Willie Bennie Baker" in the Leggs' original petition. On the same day, evidently on his own motion, the trial judge signed an "amended judgment" in which he found Union Pacific Corporation, alone, "indebted" to the Leggs for various sums named in the "amended judgment." The decretal part of the "amended judgment" awards $50,608,582 to the Leggs, "individually" and "as the executors of the Estate of Ryan Dustin Legg."

The record is silent concerning the evolution of the Leggs from their status "as the anticipated administrators of the Estate of Ryan Dustin Legg," as described in their original petition, to their status as executors of Ryan's estate. Nothing in the record shows their appointment as administrators or executors. The "amended judgment" finds the "Estate of Ryan Dustin Legg" sustained a

In an original answer filed April 24, 2000, Union Pacific Railroad *Company* appeared in the cause. The record does not indicate that a citation was ever issued, directed to, or served upon Union Pacific *Corporation*, the defendant named in the Leggs' petition, or upon Union Pacific Railroad *Company*, which filed a post-judgment answer on April 24, 2000.

Union Pacific *Corporation* and Willie Bennie *Walker* first appeared in the cause on May 16, 2000, by filing a joint motion to set aside the default judgment and to obtain a new trial. The motion states that Walker was "incorrectly named Willie Bennie Baker" in the Leggs' original petition and that Union Pacific Corporation was "incorrectly served as Union Pacific Railroad." The motion set out legal and equitable grounds for the relief requested, most of which are brought forward in this appeal. In orders signed June 16, 2000, the trial judge ordered a new trial for "Willie Bennie Baker," severed the Leggs' actions against him, and denied the relief requested by Union Pacific Corporation.

Union Pacific Corporation perfected an appeal to this court, contending the citation and its return were fatally defective and therefore insufficient for the trial court to acquire personal jurisdiction over the corporation; that the trial court erred in denying the corporation's equitable motion for new trial under *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939); that the Leggs lacked standing to assert Ryan's survival cause of action; and various other complaints of reversible error. Because we believe the face of the record does not demonstrate the trial court acquired personal jurisdiction over Union Pacific Corporation, owing

to a want of strict compliance with the rules governing issuance, service, and return of citation, we will consider and discuss only that aspect of the default judgment.

## ISSUANCE, SERVICE, AND RETURN OF CITATION

In addition to "Willie Bennie Baker," the Leggs' original petition designated Union Pacific *Corporation* as the only other defendant. It appears to be undisputed that Union Pacific *Corporation* is a corporation organized and existing under the laws of the State of Utah; that the train was owned and operated, at the time of the collision, by Union Pacific Railroad *Company*, a Delaware corporation and a wholly owned subsidiary of Union Pacific *Corporation*; and that Willie Bennie *Walker* was the train engineer at the time. Insofar as the Leggs' original petition is concerned, however, the only defendants are Willie Bennie *Baker* and Union Pacific *Corporation*. Nothing therein suggests a theory upon which Union Pacific *Corporation* is vicariously liable for the acts or omissions of Union Pacific *Railroad* or Union Pacific Railroad *Company*, neither of which is mentioned in the petition.

The Leggs' petition requested that Willie Bennie Baker and Union Pacific Corporation "be duly cited to appear and answer" in the cause. Nothing else pertaining to the Baker citation is in our record. The record before us contains a copy of a single citation. It is directed to "Union Pacific *Railroad*, by serving C.T. Corporation System, 350 North St. Paul Street, Dallas, Texas 75201." Our

total of $5,855,273 in damages exclusive of any part of the prejudgment interest and punitive damages awarded in the same instrument. It is settled, of course, that an estate is

not a legal entity. *See Henson & Int'l Aero, Inc. v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex.1987).

copy does not show a seal[2] but states the citation was issued at Cameron, Texas, on March 21, 2000. The citation bears the signature of "Cindy (*illegible*)," a deputy clerk of the district court.

We will set forth in its entirety the return of citation found in our appellate record. It is as follows:

No. 26,954

Dan V. Legg, Jr., et al.

vs.

Willie Bennie Baker, et al.

In the District Court

of Milam County, Texas

20th Judicial District

Notice Given to Defendant by Sending a True and Correct Copy of:

1. Citation

2. Copy of Plaintiffs' Original Petition by depositing the said instrument in a postpaid properly addressed wrapper in a post office under the care and custody of the United States Postal Service, same being sent by Certified Mail, Return Receipt Requested, to Defendant Union Pacific Railroad, by Serving C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

Said notice was deposited in a post office in Cameron, Texas, on the 22nd day of March 2000. Further attached hereto is the receipt of certified mail no. P970 208 736 indicating the number and address of the mailing described herein.

Betty Robertson

Clerk, District Court

By /s/ Cindy (*Illegible*)

Deputy

The appellate record includes a photocopy of each side of the Postal Service Form 3811, titled "Receipt for Certified Mail," referred to in the return. The receipt was addressed by the clerk as follows:

Union Pacific Railroad

C.T. Corporation System

350 North St. Paul Street

Dallas, Texas 75201

The receipt bears a postal-service postmark of March 22, 2000. The reverse of the receipt shows the same addressees. Section 5 of the form, headed "Received By: (Print Name)," is blank. Section 6, headed "Signature: Addressee or Agent," contains the stamped legend "C.T. Corp Systems" in block letters, but no signature in the form of a handwritten signature. Section 7 of the receipt, headed "Date of Delivery," bears the handwritten numbers "3/24."

It is evident that the deputy clerk attempted service and return of the citation by certified mail, return receipt requested; and, we find in the record no basis for believing the return receipt was not attached to the return. *See* Tex.R. Civ. P. 103, 105, 106, 107.[3]

---

2. Rule 99 of the Texas Rules of Civil Procedure requires that the citation "be signed by the clerk under seal of court." Tex.R. Civ. P. 99(b); *see Barker CATV Constr., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 792 (Tex.App.—Houston [1st Dist.] 1999, no pet.); *Verlander Enters., Inc. v. Graham*, 932 S.W.2d 259, 262 (Tex.App.—El Paso 1996, no writ). Because of other errors found in the issuance, service, and return of citation, we will not pursue the question of whether there was in fact a seal affixed to the original citation issued in the cause.

3. Rule 103 authorizes the clerk of the court, on request, to effect service of citation by certified mail, return receipt requested. Rule 106 authorizes service in that manner by mailing to the defendant a true copy of the citation with a copy of the petition attached. Rule 107 requires that in such cases the return "contain the return receipt with the addressee's signature." Rule 105 requires that "[t]he officer ... to whom process is delivered shall endorse thereon the day and hour on which he received it." No such endorse-

Our appellate record indicates the citation was "issued March 21, 2000," but nothing in the record indicates that the citation, the return, or the certified-mail receipt were ever filed in the cause. None bears the district clerk's file mark.

## DISCUSSION AND HOLDINGS

 Familiar precepts govern our review in this direct appeal from the default judgment taken below.

> [T]here are no presumptions in favor of valid service of process.... A judgment under direct attack must be reversed unless jurisdiction of the court to render the judgment appears on the face of the record.... If strict compliance is not affirmatively shown, the service of process is invalid and has no effect.... In order for a default judgment to withstand direct attack, strict compliance with the rules of civil procedure relating to the manner and mode of service of citation must appear on the face of the record.

*Renaissance Park & Renaissance Park Apartments v. Davila*, 27 S.W.3d 252, 255 (Tex.App.—Austin 2000, no pet.) (citations omitted); *see also Whitney v. L. & L. Realty Corp.*, 500 S.W.2d 94, 97 (Tex.1973). "For well over a century, [the supreme] court has required that strict compliance with the rules for service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack." *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex.1994). Concerning the requisite return of citation, the same court has said:

> The return of service is not a trivial, formulaic document. It has long been considered prima facie evidence of the

facts recited therein.... The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party.... The weight given to the return is no less when the recitations impeach the judgment than when they support it.... It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished. Tex.R. Civ. P. 99(a). This responsibility extends to seeing that service is properly reflected in the record. The Rules of Civil Procedure allow for liberal amendment of the return of service to show the true facts of service. Tex.R. Civ. P. 118. If the facts as recited in the [officer's] return ... are incorrect and do not show proper service, the one requesting service must amend the return prior to judgment.

*Id.*, at 152–53 (citations omitted).

We believe the appellate record does not demonstrate a strict, that is to say a literal, compliance with the rules governing the issuance, service, and return of citation. We should preface our remarks by noting that the rules allow for liberal amendment of "any process or proof of service" before a default judgment is taken. *See* Tex.R. Civ. P. 118. No such amendment was attempted here.

 Rule 99 of the Texas Rules of Civil Procedure requires that citation "be directed to the *defendant.*" *Id.* 99b(8) (emphasis added). Although their petition named Union Pacific *Corporation* as the correct or intended defendant, the Leggs procured service of a citation directed to Union Pacific *Railroad.* Union Pacific Corporation contends this was a fatally

---

ment appears on the citation naming Union Pacific Railroad a defendant. Because the defects discussed in the text of our opinion are sufficient to reverse the judgment, we

need not discuss the applicability of Rule 105 in instances where the clerk serves a citation by certified mail.

defective misidentification of the defendant. The Leggs contend Union Pacific Railroad was simply a misnomer that was not shown to mislead or prejudice Union Pacific Corporation. *See Chilkewitz v. Hyson*, 22 S.W.3d 825, 828 (Tex.1999); *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4–5 (Tex.1990).

A misnomer occurs when a plaintiff intends to sue the correct defendant (Union Pacific Corporation in this instance); misnames him in the petition, citation, or both; describes events in the petition in such a way that the correct defendant, when he receives service thereof, is apprised of the fact that he *is* the intended defendant; "and, most important of all, … the *intended defendant is actually served with citation.*" Susan Jean Miller, *Misnomer: Default Judgments and Strict Compliance with Service of Process Rules*, 46 Baylor L.Rev. 633, 634 (1994) (emphasis added). "The doctrine of strict compliance considers whether the record shows that exact procedural requirements are met, *not whether the intended party received notice of the lawsuit.*" *Id.* at 642 (emphasis added). The controlling issue in this appeal is, therefore, whether the record shows an exact compliance with the rules that govern the issuance, service, and return of citation. That issue should not be synthesized and confused with the question of misnomer. *See id., passim.*

The Leggs' original petition identified the defendant as Union Pacific Corporation. The petition does not suggest that Union Pacific Corporation and Union Pacific Railroad (named in the citation and return) are one and the same, or that the latter is a trade name employed by the former. Moreover, Union Pacific Corporation is described in the Leggs' petition as a Utah corporation while the character of Union Pacific Railroad is not shown in the record.

The record shows only that Union Pacific Railroad Company, a Delaware Corporation, received service of a citation directed to it by that name, together with a copy of a petition in which it was *not* named as a defendant. *See Primate Const. Co. v. Silver*, 884 S.W.2d at 152; *Verlander Enters., Inc. v. Graham*, 932 S.W.2d 259, 261 (Tex. App.—El Paso 1996, no writ). The record does *not* show the issuance, service, and return of a citation directed to Union Pacific Corporation, the defendant named in the petition. The *only* citation in the record is therefore fatally defective under Rule 99 for failing to name the correct defendant. *See Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884–85 (Tex.1985); *Hendon v. Pugh*, 46 Tex. 211, 212 (1876); *Faver v. Robinson*, 46 Tex. 204 (1876); *Pharmakinetics Lab., Inc. v. Katz*, 717 S.W.2d 704, 706 (Tex. App.—San Antonio 1986, no writ); *Brown–McKee, Inc. v. J.F. Bryan & Assoc.*, 522 S.W.2d 958, 959 (Tex.Civ.App.—Texarkana 1975, no writ). We hold accordingly. The record, however, reveals other fatal defects.

Rule 107 of the Texas Rules of Civil Procedure prohibits the granting of a "default judgment until the citation … shall have been *on file* with the clerk of the court ten days, exclusive of the *day of filing* and the day of judgment." Tex.R. Civ. P. 107 (emphasis added). The clerk's return of the citation directed to Union Pacific Railroad and the accompanying certified-mail receipt do not bear a file mark or other indication that they were in fact filed with the clerk on a particular day, or that they were, indeed, filed at all. Consequently, they do not show they were "on file" for the requisite ten days before default judgment was granted. We hold this violates the strict-compliance requirement. *See Onyx TV v. The TV Strategy Group, LLC*, 990 S.W.2d 427, 431 (Tex.

App.—Texarkana 1999, no pet.); *HB & WM, Inc. v. Smith*, 802 S.W.2d 279, 282 (Tex.App.—San Antonio 1990, no writ); *Melendez v. John R. Schatzman, Inc.*, 685 S.W.2d 137, 138 (Tex.App.—El Paso 1985, no writ). The default judgment declares the "[c]itation was served according to law and returned to the clerk where it remained on file for the time required by law." This recitation in the default judgment does not cure the defect in question. Personal jurisdiction over a defendant must appear affirmatively by a showing of due service and return of process independent of recitations in a judgment taken by default. *See Brown–McKee, Inc. v. J.F. Bryan & Associates*, 522 S.W.2d at 959.

■ Rule 107 also requires that the return receipt bear "the addressee's signature" when service is by certified mail. Tex.R. Civ. P. 107. The return receipt in this instance bears only a stamp rather than a handwritten signature, and a blank following the words "Received By: (Print Name)." We believe the return receipt does not bear the requisite addressee's signature. A stamped signature may be sufficient if shown to be authorized by proof in the record, but no such proof appears here. We hold the return fatally defective for the reason indicated. *See 14.9 Grams of Methamphetamine v. State*, 28 S.W.3d 146, 148 (Tex.App.—Texarkana 2000, no pet.); *Fowler v. Quinlan Indep. Sch. Dist.*, 963 S.W.2d 941, 943–44 n. 2 (Tex.App.—Texarkana 1998, no pet.).

■ Rule 124 prohibits rendition of judgment "against *any* defendant unless upon service, or acceptance or waiver of process, or upon an appearance of the defendant" as prescribed by the rules, except where otherwise expressly provided by law or the rules. Tex.R. Civ. P. 124 (emphasis added). When the default judgment was taken here, the Leggs' petition designated as defendants Union Pacific Corporation and "Willie Bennie Baker" and the default judgment was taken against both. The record does not reflect, however, that "Baker" had been served with citation before the judgment was signed, or that there existed any of the exceptional circumstances referred to in rule 124 with respect to service of process. Consequently, the default judgment cannot stand against Union Pacific Corporation. *See HB & WM, Inc. v. Smith*, 802 S.W.2d at 282; *Sindorf v. Cen–Tex Supply Co.*, 172 S.W.2d 775, 776 (Tex.Civ.App.—El Paso 1943, no writ). We hold accordingly.

For the reasons stated, we reverse the judgment below and remand the cause to the trial court.