**REVERSE AND REMAND and Opinion Filed May 17, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01271-CV

**DANIEL DAIGREPONT, Appellant**
**V.**
**HOLLY PREUSS, Appellee**

**On Appeal from the 345th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-17-004975**

## MEMORANDUM OPINION[1]

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Bridges

This restricted appeal arises from a no-answer default judgment granted in favor of appellee Holly Preuss. Appellant Daniel Daigrepont argues Preuss failed to properly execute substituted service of process; therefore, the trial court never acquired personal jurisdiction over him to grant a default judgment. Because the face of the record demonstrates service of process was defective, we reverse the trial court's default judgment and remand the case for a new trial.

### Background

On September 8, 2017, Preuss filed an original petition alleging (1) assault by infliction of bodily injury, (2) assault by threat of bodily injury, and (3) assault by offensive physical contact

---

[1] The Texas Supreme Court transferred this case from the Third District Court of Appeals to this Court. *See* TEX. GOV'T CODE ANN. § 73.001. In this procedural posture, we are bound to apply the precedent of that court. TEX. R. APP. P. 41.3.

against Daigrepont. She sought compensatory and punitive damages for more than $200,000 but less than or equal to $1,000,000.

On December 1, 2017, Preuss filed a motion for substituted service after reasonable attempts to serve Daigrepont pursuant to Texas Rule of Civil Procedure 106(a)(1) were unsuccessful. According to the affidavit in support of substituted service, Preuss attempted service on six different occasions but Daigrepont was never home. Daigrepont called the process server on October 21, 2017 and confirmed his address at 1117 Oyster Creek, Buda, Texas 78610. The process server attempted three more times to serve Daigrepont. Thereafter, Preuss sought substituted service.

On December 7, 2017, the trial court signed an order granting Preuss's motion for substituted service. The order provided in relevant part:

> [S]ervice of citation may be made on Defendant Daigrepont on or before the thirtieth (30) day from the date of this order, by leaving a copy of the Citation, First Amended Petition, initial discovery requests, and this Order attached with any person over the age of 16 at her [sic] residence, or by leaving the same on the front door of Defendant Daigrepont's residence.
>
> **IT IS FURTHER ORDERED** that the service made by the above method shall not be deemed perfected unless it complies with the following provisions:
>
> a. A copy of the Citation, Petition, initial discovery requests, and this order shall be mailed by BOTH certified mail, return receipt requested, AND by regular mail to the Defendant at the same address at which service is authorized above;
>
> b. The return of service shall include a statement stetting [sic] out the date of mailing and the result of the mailing by certified mail, and the date of mailing and result of the same by regular mail (i.e. whether the envelope was returned by the post office, the green card was returned signed, etc.).

A February 2, 2018 affidavit of service filed with the trial court indicates that on January 5, 2018, the process server delivered documents to Daigrepont by "posting CITATION, PLAINTIFF'S ORIGINAL PETITION, CIVIL CASE INFORMATION SHEET, ORD[ER]

–2–

GRANTING PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE to the front entrance of the subject's usua[l] place of abode per the attached signed order authorizing alternate service."

A second February 2, 2018, affidavit of service indicates "CITATION, PLAINTIFF'S ORIGINAL PETITION, CIVIL CASE INFORMATION SHEET, ORDER GRANTING PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE" was sent via regular mail and certified mail return receipt requested to Daigrepont's home address in Buda, Texas. Affiant further stated that as of February 2, 2018, he had not received a certified mail receipt or a domestic return receipt.

Preuss filed a motion for default judgment on February 23, 2018. She filed a second motion for default judgment on April 23, 2018. The only difference between these two motions related to damages. In her first motion, she stated her damages "are unliquidated and cannot be proved by written instrument" and requested a hearing to establish the amount of damages. Her second motion states, "The damages amount in Plaintiff's Petition is $999,999.00," which she supported by her own affidavit and attached exhibits.

The trial court granted a default judgment on July 16, 2018 and awarded $999,999.00 in damages. Daigrepont filed a notice of restricted appeal on September 20, 2018.

**Discussion**

A party can directly attack a default judgment via a restricted appeal if (1) he filed notice of the restricted appeal within six months after the default judgment was signed, (2) he was a party to the underlying lawsuit, (3) he did not participate in the hearing that resulted in the default judgment and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law, and (4) error is apparent on the face of the record. *See* TEX. R. APP. P. 26.1(c), 30; *Ins. Co. of Pa . v. Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009) (per curiam). These requirements are jurisdictional and will cut off a party's right to seek relief by way of a restricted appeal if they

are not met. *See Lab. Corp. of Am. v. Mid-Town Surgical Ctr., Inc.*, 16 S.W.3d 527, 528–29 (Tex. App.—Dallas 2000, no pet.) (holding court lacked jurisdiction over restricted appeal because corporation had filed its notice of restricted appeal more than six months after judgment was signed).

A default judgment cannot withstand a direct attack by a defendant who shows that he was not served in strict compliance with the Texas Rules of Civil Procedure. *Barker CATV Constr., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1999, no pet.). When reviewing a default judgment in a restricted appeal, an appellate court may not presume valid issuance, service, or return of citation. *See Rowsey v. Matetich*, No. 03-08-00727-CV, 2010 WL 3191775, at *2 (Tex. App.—Austin Aug. 12, 2010, no pet.) (mem. op.) (citing *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam)). If the record fails to show strict compliance relating to issuance, service, and return of citation, then the attempted service of process is invalid and of no effect. *Id.* "Failure to comply with these rules [governing service of process] constitutes error on the face of the record." *Lejeune*, 297 S.W.3d at 256.

Virtually any deviation will be sufficient to set aside a default judgment in a restricted appeal. *Dolly v. Aethos Commc'n Sys., Inc.*, 10 S.W.3d 384, 389 (Tex. App.—Dallas 2000, no pet.). Strict compliance is particularly important when substituted service under rule 106 is involved. *Id.* When a trial court orders substituted service pursuant to rule 106, the only authority for the substituted service is the order itself. *Id.* Thus, the requirements set forth in the order must be strictly followed. *Id.*; *see also Vespa v. Nat'l Health Ins.*, 98 S.W.3d 749, 752 (Tex. App.—Fort Worth 2003, no pet.). Any deviation from the trial court's order authorizing substituted service necessitates a reversal of the default judgment based on service. *Dolly*, 10 S.W.3d at 389; *see also Becker v. Russell*, 765 S.W.2d 899, 901 (Tex. App.—Austin 1989, no pet.) ("The face of

–4–

the record before us fails to establish that the deputy constable complied with the express terms of the district court's order authorizing substitute service of citation upon petitioner.").

The return of service is not a trivial, formulaic document. *Primate Constr., Inc.*, 884 S.W.2d at 152. Rather, it has "long been considered prima facie evidence of the facts asserted therein." *Id.* It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished. *Id.* at 153; *Titus v. S. Cty. Mut. Ins.*, No. 03-05-00310-CV, 2009 WL 2196041, at *2 (Tex. App.—Austin July 24, 2009, no pet.) (mem. op.). This responsibility extends to seeing that service is properly reflected in the record. *Primate Const., Inc.*, 884 S.W.2d at 152. Defendant's knowledge that plaintiff had sued him and his actual receipt of suit papers is not sufficient to invoke the district court's jurisdiction to render default judgment against him. *Wilson v. Dunn*, 800 S.W.2d 833, 836–37 (Tex. 1990); *see Titus*, 2009 WL 2196041, at *2.

Whether service was in strict compliance with the rules is a question of law we review do novo. *Titus*, 2009 WL 2196041, at *2.

Preuss does not dispute that Daigrepont met the first three requirements of a restricted appeal. Accordingly, our analysis focuses on whether Daigrepont established error on the face of the record. The face of the record for purposes of a restricted appeal consists of all the papers on file before the judgment as well as the reporter's record. *Taylor v. State*, 293 S.W.3d 913, 915 (Tex. App.—Austin 2009, no pet.). There is no reporter's record; therefore, we consider only the documents in the clerk's record.

In the present case, Daigrepont was served using substitute service under rule 106. *See* TEX. R. CIV. P. 106(b). Preuss was required to follow the trial court's instructions exactly when serving Daigrepont. *Vespa*, 98 S.W.3d at 752. The trial court's order required "the Citation, First Amended Petition, initial discovery requests, and this Order" be left with a person over the age of

or by leaving the documents on the front door of Daigrepont's residence. It further required "a copy of the Citation, Petition, initial discovery requests, and this Order" be mailed by certified mail, return receipt requested and by regular mail. The return of service affidavits indicate the process server posted the citation, plaintiff's original petition, civil case information sheet, and order granting plaintiff's motion for substitute service to his front door and mailed the aforementioned documents per the court's order. Because the return of service is prima facie evidence of how service was performed, it proves which documents were served on Daigrepont.

Here, the record indicates Daigrepont did not receive a copy of the "First Amended Petition" or "initial discovery requests" as required pursuant to the trial court's order, which was the only legal authorization for Preuss's actions. *Id.* By failing to strictly follow the order, Preuss violated rule 106(b). Violation of rule 106(b) makes service of process invalid and of no effect. *See Wilson*, 800 S.W.2d at 836.

To the extent Preuss argues the "minor typographical error" in the order referencing the non-existent first amended petition and discovery requests is simply a "misnomer" amounting to a "technical defect" that is not fatal to service, she is incorrect. A "misnomer" is a term of art that occurs when the record demonstrates the intended defendant is actually served with process but is misnamed in the petition or citation. *See Union Pac. Corp. v. Legg*, 49 S.W.3d 72, 78 (Tex. App.—Austin 2001, no pet.) (differentiating doctrine of strict compliance in service of process with misnomer and cautioning against synthesizing and confusing the two). Preuss has not cited to any authority in which a misnomer has been applied to alleged typographical misidentification of documents.

Although strict compliance with the rules does not require "obeisance to the minutest detail," the only authority for substituted service is the order itself. *Dolly*, 10 S.W.3d at 389. Thus, the requirements set forth in the order must be strictly followed. *Id.* The record before us indicates

the requirements for service, as set forth in the order, were not strictly followed. Preuss relies on cases to support service that discuss minor errors on returns that comply with a proper order, not an admittedly defective order itself; therefore, the cases are inapplicable to the facts before us. *See, e.g., Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d 608, 613 (Tex. App.—Corpus Christi 1996, writ denied) (service properly executed despite omitting an accent mark from defendant's name, replacing "at" with an ampersand, and omitting "Inc."); *Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 871 (Tex. App.—Houston [1st Dist.] 1995, no writ) (concluding service properly executed despite return referencing "complaint" instead of "petition," because the terms are "clearly synonymous").

Moreover, it is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished. *Primate Constr., Inc.*, 884 S.W.2d at 152; *Titus*, 2009 WL 2196041, at *2. This responsibility extends to seeing that service is properly reflected in the record. *Primate Constr., Inc.*, 884 S.W.2d at 152. Thus, once the trial court signed the order incorrectly identifying the documents to serve, Preuss should have brought the error, or "oversight" as she refers to it, to the trial court's attention and sought an amended order. Preuss's assertion that Daigrepont knew she sued him is not sufficient to invoke the district court's jurisdiction to render default judgment against him. *Wilson*, 800 S.W.2d at 837 (noting distinction "between actual receipt and proper service" and concluding actual receipt cannot cure defective service).

As explained in *Dunn*, we rigidly enforce rules governing service when a default judgment is rendered because

> the only ground supporting the judgment is that the defendant has failed to respond to the action in conformity with applicable procedure for doing so. If the defendant can then show that the person commencing the action was guilty of comparable nonconformity with procedural rules, under a principle of equality the derelictions offset each other and the merits of the controversy may be brought forward for consideration.

*Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007) (citing *Dunn*, 800 S.W.2d at 837 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 3 cmt. d (1982))). Although the strict compliance requirements "sometimes lead the courts to rather weird conclusions, preventing us from making even the most obvious and rational inferences, we believe good public policy favors the standard. The end effect of our application of the strict compliance standard is an increased opportunity for trial on the merits. [T]his policy justifies what may at first blush seem a hyper-technical rule." *Benefit Planners, L.L.P. v. RenCare, Ltd.*, 81 S.W.3d 855, 859 (Tex. App.—San Antonio 2002, pet. denied). We therefore conclude the trial court improperly granted default judgment against Daigrepont because he was not served in strict compliance with the trial court's order. *See* TEX. R. CIV. P. 106(b). Because service was defective, the trial court lacked jurisdiction to grant the default judgment. *Wilson*, 800 S.W.2d at 836. We sustain Daigrepont's second issue.

## Conclusion

We reverse the trial court's default judgment and remand the case for a new trial.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

181271F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DANIEL DAIGREPONT, Appellant

No. 05-18-01271-CV     V.

HOLLY PREUSS, Appellee

On Appeal from the 345th District Court, Travis County, Texas
Trial Court Cause No. D-1-GN-17-004975.
Opinion delivered by Justice Bridges.
Justices Brown and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for a new trial.

It is **ORDERED** that appellant DANIEL DAIGREPONT recover his costs of this appeal from appellee HOLLY PREUSS.

Judgment entered May 17, 2019.