# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00346-CV

---

**Natin Paul, Appellant**

**v.**

**ATX Lender 5, LLC, Appellee**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-007282, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Natin Paul appeals from the trial court's no-answer default judgment against him. In two issues, Paul contends that the trial court lacked jurisdiction because he was not properly served with process or, alternatively, that the trial court abused its discretion in denying his motion for new trial. For the following reasons, we affirm the trial court's default judgment.

## BACKGROUND

In September 2018, Paul was the president of four companies[1] (the companies) that obtained a loan secured by a deed of trust on real properties and Paul's personal guaranty. After the companies defaulted on the loan, ATX Lender 5, LLC (ATX) acquired the loan and purchased the properties at a non-judicial foreclosure sale.

---

[1] The four companies were 900 Cesar Chavez, LLC; 905 Cesar Chavez, LLC; 5th and Red River, LLC; and 7400 South Congress, LLC.

In December 2020, ATX sued Paul for breach of the guaranty and sought to recover the deficiency remaining on the loan after the foreclosure, as well as fees and other expenses. After ATX's process server attempted but was unable to personally serve Paul, ATX moved for substituted service, and the trial court signed an order granting ATX's motion. *See* Tex. R. Civ. P. 106(b) (authorizing substituted service). The trial court ordered that service of process would be accomplished by: (i) "affixing true and correct copies of the Citation, the Original Petition and Request for Disclosure, and [the trial court's] Order to the entry gate at [Paul's residence]"; and (ii) "mailing true and correct copies of the Citation, the Original Petition and Request for Disclosure, and [the trial court's] Order to Natin Paul, [at his residential address], by first class mail and certified mail, return receipt requested." On January 8, 2021, the process server filed a return with affidavits of service with the trial court. *See id.* R. 107 (addressing required return of service).

Approximately one week after ATX filed its suit against Paul in December 2020, the companies filed a wrongful foreclosure suit against ATX, seeking to prevent ATX from taking possession of the properties. The companies expressly referred to ATX's suit against Paul and admitted into evidence a copy of ATX's petition against him during a temporary injunction hearing in March 2021. Paul appeared at the hearing and testified that he "believe[d]" that he had been personally sued by ATX for the deficiency remaining under the loan following the foreclosure.[2] Paul, however, did not file an answer in ATX's suit against him.

---

[2] During the temporary injunction hearing in the wrongful foreclosure suit, Paul testified:

Q.    Have you been personally sued by [ATX] for a deficiency in excess of $4 million?
A.    I believe so.

In April 2021, ATX filed a motion for default judgment against Paul. Its evidence supporting the motion included the return with the affidavits of service and Paul's personal guaranty, as well as evidence of the deficiency remaining under the loan, ATX's incurred attorney's fees, and the companies' wrongful foreclosure suit. Following a hearing, the trial court signed the default judgment.

Paul filed a verified motion for new trial, seeking to set aside the default judgment based on the *Craddock* test.[3] He asserted that his failure to timely answer "was due to a mistake or accident and was neither intentional nor the result of conscious indifference," he "has a meritorious defense," and "a new trial in this matter would cause neither delay nor undue prejudice." ATX filed a response with evidence, including: (i) the transcript from the March 2021 injunction hearing in the companies' wrongful foreclosure suit against ATX; (ii) emails from ATX's attorney advising attorneys representing Paul or the companies in other matters about this suit, providing a copy of ATX's petition, and asking if they would accept service; (iii) multiple pleadings filed by the companies in the wrongful foreclosure suit and related bankruptcy proceedings referencing this suit prior to the trial court's default judgment; and (iv) the transcript of Paul's July 2021 post-default deposition in this case. Following a hearing, the trial court denied Paul's motion for new trial. This appeal followed.

## ANALYSIS

### Service of Process

In his first issue, Paul challenges the trial court's personal jurisdiction to enter a default judgment against him. Paul contends that "the trial court lacked jurisdiction to enter a

---

[3] *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

default judgment because the record does not reflect that [he] was served with process in strict compliance with the Rules and laws governing service of process."

"Proper citation and return of service are crucial to establishing personal jurisdiction." *TAC Americas, Inc. v. Boothe*, 94 S.W.3d 315, 318–19 (Tex. App.—Austin 2002, no pet.). "[A]bsent an appearance or waiver,"[4] a trial court does not have personal jurisdiction to enter a default judgment "unless the record affirmatively shows, 'at the time the default judgment is entered,' proper service of citation on the defendant." *Garcia v. Ennis*, 554 S.W.3d 209, 214 (Tex. App.—Fort Worth 2018, no pet.) (quoting *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 376 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)). "If the return of service does not strictly comply, then the service is invalid and *in personam* jurisdiction cannot be established." *TAC Americas*, 94 S.W.3d at 319 (citing *Union Pac. Corp. v. Legg*, 49 S.W.3d 72, 79 (Tex. App.—Austin 2001, no pet.)).

Paul contends that "the attempted service on [him] was defective under Texas Rule of Civil Procedure 107" because "the Affidavit of Service reports service on 'Illegible Signature.'" He relies on the requirement in subsection (c) of Rule 107 that a return of service "contain the return receipt with the addressee's signature" when service is by certified mail. *See* Tex. R. Civ. P. 107(c). ATX, however, was not required to prove that Paul signed the receipt to comply with the trial court's order for substituted service. *See id.* R. 106(b) (addressing when trial court may authorize substituted service). "When citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court." *Id.* R. 107(f).

---

[4] ATX argues that Paul waived any complaint about service of process before the trial court during the hearing on his motion for new trial, but for purposes of our analysis, we assume without deciding that he did not waive his appellate complaints.

4

As the Texas Supreme Court has observed, "[a] plaintiff may resort to substituted service only upon the failure of these methods which provide proof of actual notice. Thus, to require proof of actual notice upon substituted service would frustrate Rule 106(b)'s purpose of providing alternative methods for plaintiffs." *State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 299 (Tex. 1993) (per curiam). The court explained that Rule 106(b) expressly allows forms of service that will not necessarily result in proof of "actual notice," such as leaving the documents with someone over the age of sixteen at the defendant's home. *See id.* (citing Tex. R. Civ. P. 106(b)(1)). "[T]his method of substituted service provides no evidence in the record of when defendant received actual notice, but rather only provides proof of when plaintiff actually left the copies with someone in compliance with the rule." *Id.* Similarly, service by mail "allows a plaintiff to properly post a return of service which demonstrates that the plaintiff has precisely followed the court's order of service by means reasonably calculated to provide actual notice." *Id.*; *see also* Tex. R. Civ. P. 107(f).

Because proof of actual notice was not required to comply with the trial court's order for substituted service, it follows that the signature on the return receipt did not have to be legible for the substituted service to be proper. *See State Farm Fire*, 868 S.W.2d at 299 (concluding that return of service that stated date of service by both certified and first-class mail was "in accordance with the court order, and [was] thereby in strict compliance with the rules of civil procedure"); *Mixon v. Nelson*, No. 03-15-00287-CV, 2016 WL 4429936, at *3 (Tex. App.—Austin Aug. 19, 2016, no pet.) (mem. op.) (concluding that "the process server's affidavit [was] sufficient proof that substituted service on [the defendant] was completed in accordance with the trial court's order, and [defendant's] denials that he received actual notice of the citation and petition are not evidence to the contrary and do not create a fact issue as to substituted

5

service"); *see also Worley v. Avinger*, No. 05-18-00648-CV, 2019 WL 3729508, at \*6 (Tex. App.—Dallas Aug. 8, 2019, pet. denied) (mem. op.) (concluding that appellants had not established "fatally defective substituted service" where record reflected that "service was in accordance with the terms of the order authorizing substituted service").[5]

Here the record reflects that the process server complied with the trial court's order for substituted service by affixing a copy of the petition and the other documents to the gate of Paul's residence and mailing the documents to him at his residential address by certified mail, return receipt requested, and by first-class mail. *See* Tex. R. Civ. P. 107(f). In the affidavits of service, the process server averred that: (i) on January 4, 2021, he affixed the documents to the gate of Paul's residence; (ii) on January 6, 2021, he mailed the documents to Paul's address by certified mail, return receipt requested; and (iii) on January 4, 2021, he mailed the documents to Paul's address by first-class mail. Attached to the affidavits were photographs of the documents affixed to the gate and the envelopes that the process server mailed to Paul at his address and a copy of the proof of delivery from the post office with the recipient signature in response to the certified mailing. Thus, the record affirmatively shows that the substituted service on Paul had been completed and was proper at the time that the trial court signed the default judgment. *See Garcia*, 554 S.W.3d at 214.

---

[5] As support for his position that the attempted service on him was defective, Paul cites *Southwestern Security Services, Inc. v. Gamboa*, 172 S.W.3d 90 (Tex. App.—El Paso 2005, no pet.), and *Union Pacific Corp. v. Legg*, 49 S.W.3d 72 (Tex. App.—Austin 2001, no pet.). Those cases, however, are factually distinguishable and do not address substituted service under Rule 106(b). *See Gamboa*, 172 S.W.3d at 93 (concluding that service of process by certified mail on corporation did not comply with trial court's order because record reflected that return was not signed by corporation's registered agent); *Legg*, 49 S.W.3d at 78–79 (concluding that record did not demonstrate "compliance with the rules governing the issuance, service, and return of citation" against defendant corporation named in petition where citation by certified mail was directed to different entity and return receipt did not contain signature).

As part of his first issue, Paul also contends that the citation was fatally defective because Texas Rule of Civil Procedure 99(b)(12) required the citation to specify that a judgment by default might be awarded "for the relief demanded in the petition," but it did not. *See* Tex. R. Civ. P. 99(b)(12) (stating that citation shall "notify the defendant that in case of failure of defendant to file an answer, judgment by default may be rendered for the relief demanded in the petition"). Rule 99, however, specifically provides that a citation complies with Rule 99(b)(12) if it is in the form stated in Rule 99(c). *See id.* R. 99(b) ("The requirement of subsections 10, 12, and 13 of this section shall be in the form set forth in section c of this rule."). In this case, the citation recited the language in Rule 99(c):

> YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

*See id.* R. 99(c). Paul has not cited, and we have not found, authority that supports his contention that the citation was fatally defective because it did not include the phrase "for the relief demanded in the petition." The citation expressly referenced the petition, and the petition was attached to the citation.

For these reasons, we overrule Paul's first issue.

**Motion for New Trial**

In his second issue, Paul argues that the trial court abused its discretion in denying his motion for new trial. *See Limestone Constr., Inc. v. Summit Com. Indus. Props., Inc.*, 143 S.W.3d 538, 542 (Tex. App.—Austin 2004, no pet.) (reviewing trial court's denial of motion for new trial for abuse of discretion). "A trial court abuses its discretion when it fails to correctly

7

analyze or apply the law." *Id.* (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)). "In matters committed to a trial court's discretion, the test is whether the trial court acted arbitrarily or without reference to guiding legal principles." *Id.* (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)).

Paul contends that the trial court abused its discretion in denying his motion for new trial because he satisfied the *Craddock* test, arguing that: (i) his failure to answer or appear was not intentional or the result of conscious indifference but due to an accident or mistake, (ii) he set up a meritorious defense, and (iii) ATX will not suffer undue delay or other injury if he is granted a new trial. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam); *see also Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). If Paul did not meet his burden as to each of the three *Craddock* elements, the trial court did not abuse its discretion when it denied his motion for new trial. *See Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (stating that default judgment must be set aside if defendant proves three elements of *Craddock* test); *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (same). Because it is dispositive, we limit our analysis to the first *Craddock* element. *See* Tex. R. App. P. 47.1.

"A defendant satisfies its burden as to the first *Craddock* element when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *Sutherland*, 376 S.W.3d at 755 (citing *In re R.R.*, 209 S.W.3d at 115). A defendant's conduct is "consciously indifferent" when "the defendant knew that it was sued but did not care." *Id.* (quoting *Fidelity & Guar. Ins. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex. 2006)); *see In re R.R.*, 209 S.W.3d at 115 (looking to defendant's "knowledge and acts" to determine whether defendant's failure to file answer was

8

intentional or due to conscious indifference). "In determining if the defendant's factual assertions are controverted, the court looks to all the evidence in the record." *In re R.R.*, 209 S.W.3d at 115 (citing *Director, State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994)).

In his motion for new trial, Paul referenced multiple pending lawsuits against the companies and asserted that:

> Defendant's failure to timely answer was neither intentional nor the result of conscious indifference. Defendant does not recall receiving the citation in this matter. If he received it, he mistook the citation for a subpoena or other document that was served in another ongoing action involving the same parties and did not understand it to be a newly initiated lawsuit that he was required to answer.

But "[n]ot understanding a citation and then doing nothing following service does not constitute a mistake of law that is sufficient to meet the *Craddock* requirements." *Id.* (citing *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992)); *see Cullen Plumbing, Inc. v. Duncan*, No. 13-00-411-CV, 2001 WL 1590548, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 13, 2001, no pet.) (mem. op.) (holding that trial court did not abuse discretion in denying motion for new trial when defendant's affidavit showed that he "did nothing" after receiving "suit papers").

Paul also relies on his testimony in his July 2021 deposition in this case as to "his confusion" about "this specific lawsuit," his lack of awareness that this suit existed, and his denial that he ever personally received the citation.[6] Relying on answers filed in "all of our other cases," he testified that if he had been aware of ATX's suit against him, "we would have

---

[6] During the July 2021 deposition, Paul testified that he was not aware that "this specific lawsuit had been filed," that he did not recall receiving the citation, and that if he did, "it may have been lost in, you know, kind of translation."

obviously filed a response."[7] ATX, however, presented controverting evidence, including Paul's testimony at the March 2021 hearing in the wrongful foreclosure suit, that he was aware of this suit prior to the default judgment. At that hearing, Paul, who was the president for the companies, answered, "I believe so," when asked if he had been personally sued by ATX for a deficiency, and the companies admitted a copy of ATX's petition against Paul as an exhibit. The companies also expressly referenced this suit in petitions and motions that were filed in the wrongful foreclosure suit and others prior to the trial court's default judgment in this case.

On this record, we conclude that the trial court would not have abused its discretion by finding that Paul did not prove that his failure to answer or appear was not intentional or the result of conscious indifference but due to an accident or mistake. *See Sutherland*, 376 S.W.3d at 755; *Craddock*, 133 S.W.2d at 126. The trial court reasonably could have found that Paul's assertion that his failure to timely answer was neither intentional nor the result of conscious indifference was conclusory, *see Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex. 1992) (noting that "conclusory allegations are not sufficient" to satisfy *Craddock* elements), and based on the evidence in the record, that ATX had controverted Paul's assertions that he did not recall receiving the citation or that if he received it, he mistook it for a

_____

[7] Paul similarly testified:

- "I didn't realize it was a separate proceeding and, you know, we had—we had a lawsuit we hadn't responded to. You know, if we have a lawsuit pending against us, I would not let it go not responded to, as you can see from everything else we're involved with."

- "I mean, obviously, [there was] quite a bit of confusion between, if I'm being sued in a separate matter or if that's—was part of this existing, you know, wrongful foreclosure claim; right? So I'm not a lawyer, so I defer to counsel, you know, for each of these separate matters."

10

subpoena or other document that was served in another ongoing action, *see Sutherland*, 376 S.W.3d at 755; *In re R.R.*, 209 S.W.3d at 115.

Because we conclude that the trial court reasonably could have found that Paul did not satisfy the first *Craddock* element, we overrule Paul's second issue. *See Sutherland*, 376 S.W.3d at 755; *Dolgencorp*, 288 S.W.3d at 926.

## CONCLUSION

Having overruled Paul's issues, we affirm the trial court's default judgment.

_____

Rosa Lopez Theofanis, Justice

Before Justices Baker, Triana, and Theofanis

Affirmed

Filed:   February 15, 2023