

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00253-CV

**IN THE INTEREST OF S.M.O.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00569
Honorable Richard Garcia, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:     Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: September 25, 2024

AFFIRMED

This appeal arises from the trial court's order, signed after a bench trial, that terminates the parental rights of appellant L.O., Jr. ("Father"), the biological father of S.M.O. ("Child").[1]  By one issue, Father challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of Father's parental rights is in the best interest of Child.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).  We affirm.

### I. BACKGROUND

In April 2023, the Texas Department of Family and Protective Services (the "Department") initiated the underlying proceeding by filing a petition to terminate the parental rights of Father

---

[1] We refer to S.M.O. and S.M.O.'s family members by pseudonyms in accordance with the rules of appellate procedure.  *See* TEX. R. APP. P. 9.8(b)(2).

and C.M.G., the biological mother of Child. Thereafter, the trial court signed an "Order for Protection of a Child in an Emergency" that, among other things, appointed the Department as Child's "temporary sole managing conservator." Father did not sign a family service plan, but it was nevertheless adopted and incorporated into a court order. Meanwhile, Child was placed with unrelated foster parents ("Foster Parents").

The Department's request to terminate the parent-child relationship proceeded to a bench trial. At the March 2024 trial, Father, Gabriella Banales, a Department caseworker, and Bridgette West, a Court Appointed Special Advocate ("CASA"), testified. Father and Mother were each represented by separate counsel.

At the trial's conclusion, the trial court found by clear and convincing evidence that: (1) Father constructively abandoned Child, who had been in the permanent or temporary managing conservatorship of the Department for not less than six months (subsection (1)(N) (constructive abandonment)); (2) Father failed to comply with the provisions of a court order that specifically established the actions necessary for Father to obtain the return of Child who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of Child's removal from Father under Chapter 262 for the abuse or neglect of Child (subsection (1)(O) (failure to comply with a court-ordered service plan)); and (3) termination of Father's parental rights is in the best interest of Child. *See id*. § 161.001(b)(1) (N), (O), (b)(2). The trial court appointed the Department as Child's permanent managing conservator.

Father timely appeals from the termination order.[2]

---

[2] The termination order also terminated the parental rights of Mother. Mother does not appeal, and she is not a party to this appeal.

**II. DISCUSSION**

## A.    Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

## B.    Law on Best Interest

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. In a best interest analysis, we apply the non-

exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[3] The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id*. at 372; *In re A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.).

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, we also consider the factors set forth in section 263.307(b) of the Family Code. *Id*. § 263.307(b). Additionally, evidence that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the Department of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Additionally, a factfinder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id*. In analyzing the evidence within the *Holley* framework, evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27.

---

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

**C.** **Best Interest Analysis**

**1.** **Desires of the Child**

Banales testified that in March 2023, Child, who was approximately nineteen months old, Mother, and Father resided with Father's parents ("Paternal Grandparents"). Child was removed because drugs and a gun were found in the home. In May 2023, Father was incarcerated on what he described as a charge of felon-in-possession of a firearm. Father remained incarcerated through the March 2024 trial. Moreover, Father did not know when he would be sentenced, but he understood that the maximum potential sentence was a term of imprisonment for two years. According to Banales, Father last saw Child in March 2023.

Meanwhile, Child was placed with Foster Parents. West testified that Child's foster family includes two older half-siblings, for whom Mother's parental rights had previously been terminated. West described Child's life in her foster home as:

> They love her. It's a family, full of animals. And they have a grandmother living with them. So, it's multi-generational. It's a big, extended family that they interact with. And, primarily, her relationship with her two brothers, especially, is close. And they are already care-taking for her. And the oldest one is annoyed by her because she's the baby. It's a very typical sibling interaction.

Father countered, testifying that Child and Paternal Grandparents maintain a "real close bond." Father described how he, Paternal Grandparents, and Child watched cartoons together.

"When assessing the desires of children too young to testify articulately, courts can consider their bond with their parents and prospective adoptive parents." *In re A.N.C.*, 679 S.W.3d 311, 327 (Tex. App.—San Antonio 2023, no pet.) (quoting *E.F. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-11-00325-CV, 2011 WL 6938496, at *3 (Tex. App.—Austin Dec. 30, 2011, no pet.) (mem. op.)). "[T]he fact finder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent." *Id.* (quoting *In re G.C.S.*, 657 S.W.3d 114, 133–34 (Tex. App.—El Paso 2022, pet. denied)). The trial court, as the

factfinder, may have credited the testimony of Banales and West regarding Child's bond with the Foster Parents over Father's assertion that Child is bonded with him and Paternal Grandparents. Accordingly, the first *Holley* factor (desires of the child) weighs in favor of termination.

### 2. Present and Future Emotional and Physical Needs

Banales testified that, at the time of Child's removal, there were concerns that Child was not walking and not adequately reaching developmental milestones, such as verbalizing. Banales believed that it was in Child's best interest for her to remain with Foster Parents because they are meeting all her mental, social, and developmental needs. She explained that Child had sufficiently advanced in the care of her Foster Parents so that there are no longer any developmental concerns. Father testified that he was aware Child had received speech and physical therapy. However, he generally downplayed any notion that Child suffered from developmental delays. Father explained that, while he had possession of Child, he noticed that she was "kind of slow." It did not give Father concern because, as a child, Father was a "slow learner" as well. Father insisted that he ensured Child received her necessary vaccinations.

The trial court, as the factfinder, may have weighed Father's reluctance to accept Child's developmental delay against him. *See In re H.C.*, No. 02-23-00477-CV, 2024 WL 1561513, at *7, 9 (Tex. App.—Fort Worth Apr. 11, 2024, no pet.) (mem. op.) (holding that "[e]vidence that the Parents denied and even refused to address [child's] special needs" supported endangerment and best-interest findings). Therefore, the second *Holley* factor (present and future emotional and physical needs) weighs in favor of termination.

### 3. Present and Future Emotional and Physical Danger to the Child

The Department asked Father, "am I correct that heroin and guns were found in the home within reach of your one-year-old daughter?" Father did not answer, and instead, he pleaded his Fifth Amendment right against self-incrimination. "The Fifth Amendment, however, does not

forbid adverse inferences against witnesses in civil actions." *In re G.V.S.*, No. 04-18-00563-CV, 2018 WL 6624398, at *3 (Tex. App.—San Antonio Dec. 19, 2018, pet. denied) (mem. op.). Therefore, the trial court, as factfinder, was free to draw a negative inference regarding the presence of drugs and a firearm based on Father's refusal to answer the Department's question. *Id.*; *see also In re S.R.M.*, No. 04-17-00101-CV, 2017 WL 3270355, at *4 (Tex. App.—San Antonio Aug. 2, 2017, no pet.) (mem. op.) ("[Father's] past behavior, criminal history, and current incarceration at the time of trial could reasonably lead the trial court to conclude that such behavior would likely continue in the future."); *In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.) ("A fact finder in a termination case may permissibly infer that a parent's future conduct may well be measured by recent deliberate past conduct as it relates to the same or a similar situation.").

Father expressed concern about Child remaining with Foster Parents because he had seen news stories about children being molested while under CPS supervision. When pressed, Father had no specific evidence regarding Child. West testified that she had no concerns about the foster home. She had never seen any inappropriate or concerning behavior from the Foster Parents. Specifically, West had not seen any marks or bruises on Child.

The trial court, as the factfinder, reasonably could have found that the third *Holley* factor (present and future emotional and physical danger) weighs in favor of termination.

### 4.    Available Programs

Father testified that he had taken parenting classes, drug counseling classes, problem management classes, and a class called "Getting Out" while incarcerated. He also detailed some of the concepts that he learned in these classes. For example, from the problem management classes, Father learned that when confronted with a problem, he must step back, take a deep breath,

analyze the problem, go over it and over it again, and see his options. Father noted that he had certificates, but none were admitted into evidence.

West noted that Father "was also the father of one of my other cases and was not incarcerated and did not take advantage of any services for that child. So, I don't anticipate that there is a lot of hope for him to have her as well." According to West, that case was initiated in 2020, and it involved Child's full sibling. Father firmly denied being the sibling's father in the earlier case that West mentioned.

The trial court, as the factfinder, may have credited West's testimony over Father's. At most, the competing evidence yields a neutral fifth *Holley* factor (available programs).

### 5.      Stability of the Home or Proposed Placement

Father asked the trial court to place Child with Paternal Grandparents for however long he may remain incarcerated. Banales asserted that Parental Grandparents were an inadequate placement for Child because a home study determined that Paternal Grandparents exercised "neglectful supervision" and that neglectful supervision continues to present a safety concern from the Department's perspective. Father acknowledged that, at the time of removal, Paternal Grandfather was "always working," and Paternal Grandmother was "in and out of the house with her therapy."

Banales emphasized that Child was residing in a "kinship home," with two of her older half-siblings. She elaborated:

> [Child] is bonded extremely well to these siblings. In the time she's been there, she has gone from very quiet to extremely outgoing and bubbly. She is — she is very bonded to her siblings and the pets in the home and the foster parents.
>
> . . .
>
> Whenever — whenever I'm in the home and [Child] needs something, the first thing she always does is run to her foster parents. She is calling them dad and mom.

> So, she appears extremely bonded. And whenever she gets a little distressed, from what I can see, they are able to soothe her.

West emphasized that it would be harmful for Child to be removed from her foster home, testifying:

> I think just to be adopted into this family, where she has two half-siblings and she is very loved and well cared for. And they also maintain a connection to the adoptive family of one of [Child's] other siblings . . . . So, she would be connected to all of them. And they are also, I believe, open to continuing a connection to the paternal grandparents, because [Child] clearly loves them as well.

Referring to Foster Parents' willingness to allow Child to maintain relationships with her biological family, West believed that a better course for Child would be for her to decide, when she is older, whether she wants to have a relationship with Father.

The uncertainty surrounding Father's incarceration and how Child has bonded with her foster family implicate the seventh *Holley* factor (the stability of the home or proposed placement). *See In re G.V.*, No. 14-02-00604-CV, 2003 WL 21230176, at *5 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (noting the stability that a proposed placement promises "weigh[s] heavily in the court's finding that termination is in the best interest" of a child). The seventh *Holley* factor (the stability of the home or proposed placement) weighs in favor of termination.

### 6. Any Excuse for the Parent's Acts or Omissions

Father testified that he has grown and that "[t]his stuff really means a lot to me, being a father. And it hurt me to be away everyday." He elaborated:

> I really don't want to give up. I really don't want to give up. If I was out there, I know I would get her back, because I have no problems with drugs, or classes, or anything like that. I would have done everything that y'all asked, and I know I would have gotten her back.

While Father expressed optimism, he offered no excuse for his criminal behavior that precipitated the termination proceeding. *See In re E.B.*, No. 02-22-00205-CV, 2022 WL 17172340, at *10

(Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op.) ("While Mother acknowledges responsibility for her incarceration, it is difficult to excuse Mother for her failings based on her incarceration when that incarceration was because of her own choices."). Accordingly, the ninth *Holley* factor (any excuse for the parent's acts or omissions) weighs in favor of termination.

**D.      Best Interest Disposition**

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Father's parental rights was in Child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. The first (desires of the child), second (present and future emotional and physical needs), third (emotional and physical danger to a child now and in the future), seventh (stability of the home or proposed placement), and ninth (any excuse for the parent's acts or omissions) *Holley* factors weigh in favor of termination. *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.— San Antonio July 25, 2018, pet. denied) (mem. op.) ("Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest — especially when the evidence shows the parental relationship endangered the child's safety."). At most, only the fifth (available programs) *Holley* factor is neutral. We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in Child's best interest. *See id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). Father's sole issue is overruled.

### III. CONCLUSION

We affirm the trial court's parental-termination order.

Rebeca C. Martinez, Chief Justice